510 P.2d 449 (1973)
BIRKENMAYER & COMPANY, INC., a Colorado corporation, Plaintiff-Appellant,
v.
HOMESTEAD MINERALS, a Utah corporation, Defendant-Appellee.
No. 71-449.
Colorado Court of Appeals, Div. I.
May 15, 1973.
Hindry & Meyer, Samuel J. Smith, Denver, for plaintiff-appellant.
Holme Roberts & Owen, Donald C. McKinlay, Denver, for defendant-appellee.
Selected for Official Publication.
SMITH, Judge.
Plaintiff Birkenmayer and Company, Inc., stockbrokers and dealers in investment securities, brought this action against Howard L. Minister and Homestead Minerals Corporation (a Utah corporation).
*450 The complaint alleged that, on August 9, 1968, plaintiff, upon Mr. Minister's order, sold 5,000 shares of Homestead Minerals Corporation stock at $.75 per share and paid to him $3,750 less a broker's commission of $225. Plaintiff did so in the belief that Mr. Minister owned such shares of Homestead Minerals Corporation stock. Mr. Minister, however, after the sale by plaintiff and upon plaintiff's demand for delivery of the stock certificates, produced 5,000 shares of stock in Homestead Oil and Uranium Company (a Colorado corporation). Allegedly, in order to meet its obligation to purchasers of the stock which Mr. Minister failed to deliver, plaintiff, on January 31, 1969, was forced to purchase 5,000 shares of Homestead Minerals Corporation stock at $6.25 per share for a total of $31,250.
Mr. Minister confessed judgment in favor of plaintiff in the amount of $3,525 in return for plaintiff's dismissal with prejudice of all claims against him. It is only the liability of defendant Homestead Minerals Corporation that is at issue on this appeal.
In its claim against Homestead Minerals Corporation, plaintiff averred that one Mr. M. K. Snow, transfer agent for defendant corporation, was acting within the scope of that employment when he led Mr. Minister to believe that he in fact owned Homestead Minerals Corporation stock. The following letter and reply was the basis of this contention:
"Dear Mr. Snow
I have five1000 share certificates of Homestead Oil and Uranium Company stock for transfer to the new company. They are certificates Nos. 37-38-39-40-41.
Kindly give me complete data on the transfer of said stockvalues in new companyand the small cost of transferThank you.
 Sincerely
 Howard L. Minister" (S)
Mr. Snow's reply was as follows:
"Dear Mr. Minister:
Please accept this note as answer to your inquiry contained on the reverse side of this sheet as follows:
It wi[l]l not be necessary for you to have your present stock certificates changed into the name of the company, as it now exi[s]ts, towit: Homestead Minerals Corporation, for the fact that all of the certificates in whatever of the various names of the corporation, during its entire existen[c]e, are equally negotiable and trad[e]able.
By way of explanation, the following is a short history of the name changes of this corporation. First of all, at the time of the original issue of this corporation, i[t] was issued as Hom[e]stead Uranium Corporation, back in 1957 o[r] 1958, then later, three or four years as I remember, the name was changed merely by the deletion of the word "uranium", and for a few [y]ears it was known as just plain Homestead Corporation. Then a year or so ago, the name was again changed to Homestead Oil Corporation, and finally, just a few weeks ago, the name was changed to its current name, which is Homestead Minerals Corporation.

Through all of these name changes, th[e] corporate set up, as to par value, and authorized capitalization, and shares, and etc., has not changed. And further, all of the certificates of stock of this corporation under which ever name issued, have all been numbered in chronol[o]gical sequence, and every certificate is freely tradable, and marketable, no matter which of the four names it is in, by tendering same directly to your broker, should you desire to sell same. It has never been necessary for the stockholders of this corporation to surrender their stock merely for the purpose of having it changed in to a later name of the corporation.

*451 Hoping this will answer for the present your inquiry contained on the reverse side of this sheet, I remain yours,
 Cordially,
 M. K. Snow, Transfer Agent" (S)
Mr. Snow's reply was alleged to have been of such a nature as to lead reasonable men to believe that the shares held by Mr. Minister were shares of defendant Homestead Minerals Corporation. Plaintiff asserted that it relied upon this writing to its detriment alleging that Mr. Snow, as defendant's transfer agent, violated the duty of care owed plaintiff. Plaintiff alleged damages in the amount of $31,250, the cost of purchasing 5,000 shares of Homestead Minerals Corporation stock for disbursing to its customers. Defendant corporation denied liability on several grounds, among which was the assertion that neither it nor its transfer agent owed a duty to plaintiff.
Trial was to a jury which returned a verdict for plaintiff in the amount of $7,000. Thereafter, the court granted defendant's motion for judgment notwithstanding the verdict and entered judgment in favor of defendant Homestead Minerals Corporation and against plaintiff. Plaintiff's motion for a new trial was denied, and plaintiff appeals to this court. We affirm.
The trial court, relying on the case of Ultramares Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441, determined as a matter of law that defendant Homestead could not be held liable to plaintiff for pecuniary damages where its transfer agent was merely negligent in replying to Mr. Minister's request. In Ultramares, an accounting firm was sued by a company that had relied on a certified balance sheet prepared by the accounting firm. The accounting firm was aware that the balance sheet they were preparing, when certified, would be exhibited to third parties who in the course of business, would rely upon the certification. Defendant did not know specific parties to whom the balance sheets would be shown. Separate actions of negligence and fraud were asserted. The essence of the opinion as stated by Chief Justice Cardozo is as follows:
"The defendants owed to their employer a duty imposed by law to make their certificate without fraud, and a duty growing out of contract to make it with the care and caution proper to their calling. Fraud includes the pretense of knowledge when knowledge there is none. To creditors and investors to whom the employer exhibited the certificate, the defendants owed a like duty to make it without fraud, since there was notice in the circumstances of its making that the employer did not intend to keep it to himself. . . . A different question develops when we ask whether they owed a duty to these to make it without negligence. If liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences. . . ."
In considering the argument that negligent representations are actionable, the distinction was made between those rendered primarily for the information of unspecified third parties and those rendered primarily for the benefit of the party for whom they are furnished. Hence, it was determined that defendant's liability for its negligent actions should not in the Ultramares case extend to the third party's pecuniary losses.
The reasoning of Ultramares has been accepted in many jurisdictions. See Annot., 54 A.L.R.2d 324. The United States Circuit Court in interpreting Colorado law has followed Ultramares. Stephens Industries, Inc. v. Haskins and Sells, 438 F.2d 357 (10th Cir.).
Defendant Homestead cannot be held legally responsible for plaintiff's pecuniary loss. The evidence establishes, without *452 contradiction, that it is not common practice for plaintiff or other stockbrokers to accept a letter from a transfer agent as evidence that the addressee owns a certain stock. To find defendant liable in this situation would be to make defendant liable to any third party who might read and rely, to his detriment, on the writing of defendant's agent. This would expose defendant to liability for "an indeterminate amount for an indeterminate time to an indeterminate class."
Judgment affirmed.
COYTE and ENOCH, JJ., concur.