WHEATON NATIONAL BANK, Trustee, Plaintiff-Appellee, *v.* LORRAINE AARVOLD, Defendant-Appellant—(THE SAVINGS AND PROFIT SHARING PENSION FUND OF SEARS ROEBUCK & COMPANY EMPLOYEES *et al.*, Defendants; MICHAEL AARVOLD, a Minor, *et al.*, Defendants-Appellees).

Second District (1st Division)   No. 74-396

Opinion filed May 28, 1976.

Theodore W. Wrobleski, of Barclay, Damisch & Sinson, of Chicago, for appellant.

Alexander J. Burek, of Burek & Field, Thomas C. Kelleghan, and Roger K. O'Reilly, all of Wheaton, for appellees.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The appellant and appellees in this case are all claiming to be entitled, directly or indirectly, to the proceeds of a life insurance policy on the life of John O. Aarvold, Jr., and to the stock and cash due under a Sears Roebuck and Co. Savings and Profit Sharing Fund. Both the policy and the Fund listed as the designated beneficiary the Wheaton National Bank as trustee under trust 1231 dated September 27, 1967. In February, 1969, another trust agreement, given the same number, "revoked and terminated" the prior agreement and was substituted for it. The appellant contends that because of the "revocation" the designated beneficiary no longer exists and accordingly the funds must be paid to the estate of the deceased. The trial court ruled that the second trust agreement (which deleted the name of his first wife, Nancy Aarvold, as one of the beneficiaries) merely modified the first and awarded the funds to the trustee. We agree and affirm.

On September 27, 1967, the decedent John Aarvold, Jr., and the plaintiff Wheaton National Bank signed a written trust agreement which provided in part that the insured had delivered to the bank certain insurance policies but retained the right to change the beneficiary, borrow on the policies, pledge or assign them, surrender them, or exercise any other option under them as well as to remove them from the trustee's custody, that the decedent's wife, Nancy, and his children were the beneficiaries of the trust and that the trust was revocable. The bank of course was named the trustee. The trust created by this agreement was given the trust number 1231.

On September 27, 1967, a new designation of beneficiary for the Savings and Profit Sharing Pension Fund of Sears, Roebuck and Company Employees was completed which designated the primary beneficiary to be:

"III. *NEW DESIGNATION OF BENEFICIARY.*

I hereby revoke all my previous designations of primary and contingent beneficiaries and release THE SAVINGS AND PROFIT SHARING PENSION FUND OF SEARS, ROEBUCK AND CO. EMPLOYES (herein called the Fund) from liability thereunder, and designate below my beneficiary or beneficiaries under the Fund who shall be entitled to receive the credits remaining in my Fund account at the date of my death, all in accordance with and subject to the Rules and Regulations of the Fund.

A. PRIMARY BENEFICIARY OR BENEFICIARIES:

WHEATON NATIONAL BANK, 111 N. Hale, as Trustee(s), or

its, his, her or their successor Trustee(s), under an AGREEMENT AND DECLARATION OF TRUST bearing date of *September 27, 1967*, executed by me, as Settlor, and the said WHEATON NATIONAL BANK as Trustee(s), creating the trust known as TRUST NUMBER 1231'."

Also, on September 27, 1967, a new beneficiary designation was made for the life insurance. It provided:

"In accordance with the conditions of Group policy number *19100G*, I hereby revoke any previous designations of beneficiary and contingent beneficiary (if any) and designate as beneficiary, in the event of my death, in certificate number 349234 WHEATON NATIONAL BANK 111 NORTH HALE STREET, WHEATON, ILLINOIS and successor in trust, as trustee under ___ TRUST NO. 1231 bearing the date of September 27, 1967, executed by me and by WHEATON NATIONAL BANK."

On February 14, 1969, the two parties executed a new trust agreement which by its terms provided that "the agreement between Insured and the Trustee dated September 27, 1967, is hereby terminated, and the agreement as hereinafter set forth shall be substituted therefor." The only important change in the trust agreement was to eliminate Nancy Aarvold as a beneficiary of the trust. As in the first trust it was provided that the insured had delivered the policies of insurance to the trustee and was causing the death benefits to be made payable to the trustee. The trust number remained 1231.

On March 7, 1969, the decedent also executed a new will. His personal effects were bequeathed to his children. The residue of the estate was devised to the trustee under the 1969 insurance trust agreement.

■■ In the fall of 1969, apparently, Nancy and John Aarvold were divorced. When Nancy demanded that the minor children be made irrevocable beneficiaries of the insurance policy and profit sharing and pension plan, the decedent wrote that "my trust agreement should satisfy this." There was, however, no stipulation to this effect in the divorce decree.

Sometime between the divorce and his death on May 3, 1971, the decedent married the defendant Lorraine Aarvold. Because she was not mentioned in the will, Lorraine renounced it and claims one-third of the estate. She contends that the designated beneficiary of the policy and trust agreement no longer exists and that, therefore, the funds are payable to the estate.

The appellee contends that the ownership of the insurance policy and the profit sharing fund certificate passed to the bank and that they were assigned to the bank. Clearly, however, this is not true since by the

express terms of the trust agreement the insured retained the full right of control over them.

The defendant Lorraine Aarvold contends that the insured's intent alone is insufficient to change the beneficiary and that the method stipulated by the insurance policy for changing the beneficiary must be complied with, that since there was no compliance, no change of beneficiary was ever made, that the original beneficiary, trustee Wheaton National Bank under trust 1231 dated *September 27, 1967*, had ceased to exist and accordingly the funds should be paid, as provided in both the policy and the certificate where there was no beneficiary, to the estate.

The defendant's contention that the decedent's actions were insufficient to change the beneficiary depends, of course, on such a change being necessary. We conclude that it was not, and that the trustee Wheaton National Bank, as trustee under trust 1231, may properly take the funds under the original designation.

The beneficiary designation in the insurance policy was made at the same time the trust was created. It provided that the beneficiary was Wheaton National Bank, and that the bank took as trustee under trust 1231 which bore the date September 27, 1967. It would appear that the mention of the date was purely for purposes of description and identification (see Bogert, Trusts & Trustees §236, at 16 (2d ed. 1962)). As such, since it is clear what trust agreement is intended (trust 1231 of which Wheaton National Bank is the trustee), the mention of the date can be treated as mere surplusage and be disregarded. 2 Appleman, Insurance Law and Practice §§781, 802 (1966).

■■ In determining who the beneficiary is, it is the intention of the insured which is the controlling element. *(New York Life Insurance Co. v. Rak* (1962), 24 Ill. 2d 128, 180 N.E.2d 470; *Cox v. Employers Life Insurance Co. v. Wausau* (1975), 25 Ill. App. 3d 12, 322 N.E.2d 555; 2 Appleman, Insurance Law and Practice §781 (1966).) As stated by the latter text at pages 169-70:

> "The intention of the insured is the controlling element, and almost any form of words which demonstrates the insured's intention is sufficient. Thus, the fact that the beneficiaries in a life policy are misdescribed as respects their relationship to the insured generally will not result in the designation of no beneficiary so as to disregard the intent of the insured. A designation will be construed, wherever possible, to give legal effect thereto * * *."

Likewise it was stated in *Butcher v. Pollard* (1972), 32 Ohio App. 2d 1, 4, 288 N.E.2d 204, 206:

> "The designation of a group life insurance beneficiary is solely a decision of the insured and normally he will name a specific

individual or a class of individuals. Whenever a dispute develops over the connotation of the named beneficiary, the court's responsibility is to ascertain and give effect to his intentions. And, although intention is an intangible commodity, it may nevertheless be gathered indirectly through the insured's chosen words and any relevant circumstances prior to and contemporaneous with his decision."

In addition, as is stated in 46 C.J.S. *Insurance* §1186 (1946), at page 98, [t]*he designation and description of the beneficiary in the policy are liberally construed in his favor*, and, where it is not clear from the policy exactly what person has been designated as beneficiary, the intention of insured is controlling * * *." (Emphasis added.) There is no reason to suppose that the insured intended the designation of date to be anything more than a single means to identify the trust or that he intended the validity of the designation to depend on the accuracy of the date. There is no difficulty in determining that the trust created by the decedent with the Wheaton National Bank as trustee, bearing the number 1231, was the intended beneficiary regardless of the date of the controlling trust agreement especially since the trust was created for the purpose of holding the insurance and pension funds, this purpose remained the same throughout, the trustee remained the same and the terms and beneficiaries remained the same except that in 1969 Nancy Aarvold was deleted as a beneficiary of the trust. Accordingly, there is no reason for the court here to ignore the insured's intent and to raise the mere description of the status of a material condition. Rather the court will treat the date as merely surplusage and honor the intention of the insured.

The pension fund agreement, while not insurance, should be construed in the same manner and like it be given a reasonable interpretation to ascertain and effectuate the intention of the insured.

However, even if it should be assumed that, because of the differences in the wording of the trust agreement, the date here is material to the identification of the beneficiary, the plaintiff Wheaton National Bank is still entitled to receive the proceeds of the pension fund. We agree with the trial judge that the trust agreement of February, 1969, did not revoke trust 1231 but only amended its terms.

■■ Revocation is the resumption by the settlor of possession and title to the trust property free of any obligation to the beneficiaries. (Bogert, Law of Trusts and Trustees §998, 455 at (2d ed. 1962).) And "[a]lthough a trust, revocable by its terms, can be revoked by a definite manifestation of the settlor's intent to revoke, ' [it] is not revoked by any * * * act which is consistent with its continued existence.' " *(In re Estate of Sanderson* (Colo. App. 1973), 510 P. 2d 452, 454, quoting from *Hoffa v. Hough* (1943), 181 Md. 472, 30 A.2d 761.) And even where a form

provides that the trust is "revoked," the court is not required to find that it has been totally revoked rather than merely amended. *(In re Estate of Sanderson* (Colo. App. 1973), 510 P.2d 452.) Here it is clear that the deceased's intention was not "to resume possession and title to the trust property free of any obligation to the beneficiaries." Nor was it to terminate one trust and create a different one. While the language of the second trust agreement is unfortunate and ambiguous, it is clear from the document as a whole that his only intention was to modify trust 1231 by substituting certain written provisions for ones in the original written agreement. Trust 1231, created in September, 1967, never ceased to exist.

The defendant contends that the plaintiff was not entitled to summary judgment since there are disputed questions of fact including whether it was the understanding of Nancy and John Aarvold, Jr. that he had made the children irrevocable beneficiaries, whether the deceased was never informed by his attorney that anything more was needed to be done to protect the children's interest, whether the failure to change the beneficiary was due to inadvertence and error and whether the decedent's intentions may have changed. None of these questions are material since the deceased did not and did not need to change the beneficiary. While his intention may have changed after his second marriage, he took no steps either again to amend the trust or to change the beneficiary, both of which he could have done at any time. As defendant says, he clearly kept an option open to him to change his mind. But he never exercised that option.

■■ ■ Summary judgment is properly granted when the record presents purely questions of law or where the only disputed issues of fact do not relate to relevant matters. (23 Ill. L. & Pr. *Judgments* §73, at 186 (1956).) And the construction of a written agreement is four the court, not the jury, unless such construction is dependent on extrinsic facts and such extrinsic facts are disputed. *Berry v. Blackard Construction Co.* (1973), 13 Ill. App. 3d 768, 300 N.E.2d 627; *Bertlee Co. v. Illinois Publishing & Printing Co.* (1943), 320 Ill. App. 490, 52 N.E.2d 47.

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

GUILD, P. J., and SEIDENFELD, J., concur.