Arlie O. MOORE, Plaintiff-Appellant,

v.

Earl J. GEORGESON and The Pikes Peak National Bank of Colorado Springs, Defendants-Appellees.

No. 81CA0164.

Colorado Court of Appeals,
Div. III.

Oct. 20, 1983.

Rehearing Denied Nov. 10, 1983.

Certiorari Denied April 23, 1984.

Mitchem & Mitchem, P.C., Allen P. Mitchem, James E. Mitchem, Denver, for plaintiff-appellant.

Bennett, Heinicke, Hollaway & Gerlach, John F. Bennett, Dale A. Derlach, Colorado Springs, for defendants-appellees.

TURSI, Judge.

Arlie O. Moore (Moore) appeals from the trial court's disposition of his claims for relief in favor of the Pikes Peak National Bank and Earl J. Georgeson, one of its directors (Bank). We affirm.

In a transaction spanning December 1973 through March 1974, Moore, by a purchasing agreement, acquired 60% of the Bank's stock. In addition, Moore, in his individual capacity, entered into an agreement to purchase the bank premises. As a result of the latter transaction, Moore became the owner-lessor of the bank premises.

On closing day of the stock purchase, the Bank's board of directors held a meeting for the purpose of replacing retiring board members. At that meeting, Moore was elected president, chief executive officer, and chairman of the board. On that same day, the board approved both an amendment to the Bank's lease agreement and a five-year employment contract for Moore. Both documents had been prepared by Moore's attorney.

The employment agreement executed in favor of Moore contained the following:

"8. *Disability.* If Moore is unable to perform his services by reason of illness or incapacity for a period of more than ninety (90) consecutive days, the board of directors of the Bank may remove Moore as president and chief executive officer, but he shall be compensated as follows:

(a) For a period one (1) year from date of such illness or incapacity, Moore shall receive the full amount of his base salary in effect at the commencement of such period.

(b) For a period five (5) years thereafter (six (6) years from the date of such illness or incapacity) or until Moore attains the age of 65, whichever event shall first occur, Moore shall receive fifty percent (50%) of the full amount of his base salary in effect at the commencement of such illness or incapacity.

13. *Entire Agreement.* This instrument contains the entire agreement of the parties. It may not be changed orally but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought."

The lease agreement, as amended, granted the Bank an option to purchase the leased premises valid through February 1, 1980. Ninety days written notice to the lessor was required in order to exercise the option. The lease states:

"If the option is exercised, the Lessor shall fix a closing date for the sale and purchase of the Demised Premises, which date shall be within fifteen (15) days after the expiration of the option notice. Lessor shall notify Lessee in

writing of the closing date and the method of payment ... which the Lessor has selected not less than then (10) days prior to the closing date."

Although he suffered a heart attack in 1975 and underwent heart by-pass surgery in 1977, Moore remained in his status with the Bank until he tendered his resignation as president in August 1978. In his resignation letter to the Bank's board of directors, Moore stated that he was required to resign his position as president because of the progression of his heart condition and his physician's concern with employment stress. The Bank accepted the resignation with regret.

Thereafter, Moore sought disability compensation from the Bank pursuant to the above-quoted disability provision. The Bank declined to make the disability payments, and instead continued to forward Moore his salary checks. The Bank acted on the advice of the counsel, who, subsequent to the preparation of the employment contract, had been engaged by Moore as counsel for the Bank. Moore returned the salary checks as he received them. Further, the Bank notified the insurance company covering disability that Moore remained in its employ, thus preventing him from receiving the disability payments.

In a letter dated March 13, 1979, the Bank notified Moore of its intent to exercise its option to purchase the bank premises. Moore rejected the option notice as ineffective because it failed to state its own expiration date. In addition, Moore claimed that the lease amendment and the employment contract were intended by the parties to constitute a single agreement, and that refusal to pay disability benefits constituted a breach of the entire agreement, thus relieving him from any obligation under the lease option provision.

In the trial court, Moore sought a judgment declaring that the employment contract and the amended lease constitute a single agreement between the Bank and himself. Prior to trial, on the Bank's motion for summary judgment, the trial court held, as a matter of law, that the employment contract and the lease are independent agreements, and granted the motion.

At the close of Moore's evidence, the Bank moved for, and was granted a directed verdict, on Moore's claim for disability compensation.

Moore also claimed that the Bank had failed to exercise properly the option to purchase the bank premises. The Bank counterclaimed for specific performance of the option contract. On Moore's motion for summary judgment concerning this issue, the trial court denied Moore's motion and granted summary judgment for the Bank. Although the Bank did not expressly move for summary judgment, the trial court held that its order was justified by the Bank's counterclaim for specific performance.

Moore's final allegation, outrageous conduct by the Bank because it refused to pay disability compensation, was disposed of by directed verdict in favor of the Bank. The trial court found the evidence insufficient to support the claim and therefore dismissed for lack of evidence.

Moore contends that the granting of summary judgment in favor of the Bank as to his first claim was improper as he was not afforded the opportunity to introduce facts showing the parties intended that the employment contract and the amended lease constitute a single agreement. We disagree.

Extrinsic evidence is admissible to prove intent only if there is an ambiguity in the terms of the written agreement. Construction of unambiguous written documents is resolved as a matter of law. *Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc.*, 195 Colo. 253, 577 P.2d 748 (1978). Where, as here, a contract is unambiguous, and contains an integration clause stating that the writing constitutes the entire agreement of the parties, it must be enforced according to its terms. We agree with the trial court's conclusion that, as a matter of law, the employment contract and the amended lease are independent agreements.

██ Thus, summary judgment was properly entered on this issue. In granting the Bank a directed verdict on the disability compensation claim, the trial court found it was uncontradicted that Moore was at no time absent for a period of more than ninety consecutive days, and that he was not removed, but had resigned from his position as president of the Bank.

A directed verdict may properly be granted a defendant when the evidence, viewed in the light most favorable to the plaintiff, is insufficient to support a verdict in his favor. *Gossard v. Watson,* 122 Colo. 271, 221 P.2d 353 (1950). The test' on review is whether fair-minded persons could draw different conclusions from the evidence presented. *CeBuzz, Inc. v. Sniderman,* 171 Colo. 246, 466 P.2d 457 (1970).

In plain and unambiguous terms, the disability provision requires that the board of directors of the Bank remove Moore if he fails to perform his appointed duties for a period of more than ninety consecutive days. The evidence was uncontroverted that this condition was not met; thus, the directed verdict was properly granted. *See Radiology Professional Corp., supra. See also American Industrial Leasing Co. v. Costello,* 160 Colo. 588, 418 P.2d 881 (1966).

Moore's third contention is that the option to purchase the bank premises, contained in the lease agreement, was not properly exercised. He contends that the 'trial court erred procedurally in granting summary judgment in favor of the Bank as no such motion was put before the trial court by the Bank. We disagree.

██ A cross-motion for summary judgment by a nonmoving party is not a prerequisite to granting summary judgment in his favor. In *Field v. Sisters of Mercy,* 126 Colo. 1, 245 P.2d 1167 (1952) the trial court, without motion by either of the parties, granted summary judgment in favor of the defendant at a pretrial conference in which both parties presented arguments on the dispositive issue. Our supreme court held that, although summary judgment was on the court's own initiative, the plaintiff was not prejudiced as she was fully heard on the matter prior to the trial court's ruling.

Federal cases are in accord. 6 *J. Moore, Moore's Federal Practice* ¶ 56.12 (2d ed. 1983). Such conclusions have been justified under F.R.C.P. 54 which states that final judgments shall grant appropriate relief to the prevailing party, even though such party has not demanded such relief in his pleadings. *See* C.R.C.P. 54(c).

Here, the plaintiff was not prejudiced. The parties put forth arguments based on Moore's motion for summary judgment. The trial court did not make its ruling until after both parties were fully heard.

Substantively, Moore contends that the option was not properly exercised by the Bank as the notice failed to state its duration. It is further contended that the Bank acted ultra vires in exercising the option to purchase as it had not received permission from the Comptroller of the Currency required for this investment in bank premises. *See* 12 U.S.C. § 371d. It is not disputed that the attempted exercise of the option occurred within the option period, and that permission was received from the Comptroller of the Currency approximately one month after the March 13, 1979 option notice was sent to Moore.

██ The option provision states that at least ninety days written notice to the lessor is required for its exercise. The notice states that the option is being exercised "in accordance with the terms and conditions set forth in said [option] paragraph." The trial court found, and we agree, that in the absence of an express provision to the contrary, a duration period of ninety days is presumed.

The option provision does not require that tender of the purchase price accompany the option notice. Rather, it merely requires notice of intent to consummate a sale at a future date.

██ In an executory contract with performance due at a future date, it is not necessary that a party be presently able to perform. It is the time set for perform-

ance which is relevant for determining performance or breach. As such, it was not necessary that the Bank be able to consummate the sale when the option was exercised. *Restatement (Second) of Contracts* § 235 comment b (1981). *See Taylor v. Johnston,* 15 Cal.3d 130, 123 Cal.Rptr. 641, 539 P.2d 425 (1975). All that is required, in order to avoid a breach, is that the Bank be capable of performing at the time set for performance. Therefore, summary judgment granting specific performance of the option contract to purchase the bank premises in favor of the Bank was proper.

Finally, Moore contends that the trial court erred in directing a verdict at the close of the evidence in favor of the Bank in regard to the tort of outrageous conduct.

■ As to such a claim, liability will be found only if defendant's conduct is so outrageous in character and so extreme in degree as to go beyond all bounds of decency. And, although the question of whether conduct is outrageous is one for the jury, it is for the court first to determine whether reasonable persons could differ on the outrageousness issue. *Meiter v. Cavanaugh,* 40 Colo.App. 454, 580 P.2d 399 (1978).

Here, the trial court viewed the evidence presented in a light most favorable to Moore in directing a verdict in favor of the Bank. We perceive no error in its disposition of this claim.

The judgment is affirmed.

BERMAN and KELLY, JJ., concur.