**Alfred A. KELLER and Martha M. Keller, Plaintiffs–Appellees,**

v.

**A.O. SMITH HARVESTORE PRODUCTS, INC., a Delaware corporation, Defendant–Appellant.**

**No. 88SA397.**

Supreme Court of Colorado, En Banc.

Oct. 7, 1991.

Wood, Ris & Hames, P.C., E. Gregory Martin, Denver, Wilfred R. Mann, Boulder, for plaintiffs–appellees.

The Law Firm of Michael S. Porter, Michael S. Porter, Denver, Francis A. Benedetti, Wray, Katten Muchin & Zavis, Donald E. Egan, Lee Ann Watson, Andrew M. Hale, Chicago, Ill., for defendant-appellant.

Justice KIRSHBAUM delivered the Opinion of the Court.

Pursuant to C.A.R. 21.1, this court has agreed to answer the following questions certified to it by the United States Court of Appeals for the Tenth Circuit:

1. Whether a cause of action for negligent misrepresentation lies against the manufacturer of a product for representations made during the course of the sale of that product despite the execution of a fully integrated sales agreement.

2. If so, whether the existence of a clause in the sales agreement specifically disclaiming reliance on representations made to the buyer prior to the execution of the sales agreement legally precludes a finding that the buyer in fact relied on such representations.[1]

These questions have been certified in connection with an appellate proceeding involving, *inter alia*, review of a judgment entered by the United States District Court for the District of Colorado on behalf of buyers of a product and against the manufacturer of the product on a claim of negligent misrepresentation. We answer the first question in the affirmative and answer the second question in the negative.

I

The following undisputed facts are pertinent to this certification proceeding. In July 1980, Alfred A. Keller and Martha M. Keller purchased two Harvestore grain storage systems manufactured by A.O. Smith Harvestore Products, Inc. (hereinafter AOSHPI) from an independent Harvestore dealer. Harvestore systems, which include specially constructed silos and unloading equipment, are designed to prevent oxygen from coming into contact

---

1. A third question originally certified for this court's response has been withdrawn.

with feed stored in the silos, thus enabling ranchers to store feed indefinitely and cut feed losses. AOSHPI owns the design patent for the Harvestore Silo. Prospective buyers were advised that use of the silo would result in the reduction or elimination of protein supplements in feeding dairy herds. AOSHPI provided its distributors with video tapes, brochures, and extensive literature to promote sales of Harvestore Silos.

Based upon the representations contained in video tapes, brochures and literature prepared by AOSHPI, the Kellers signed purchase orders with an AOSHPI distributor in July 1980 for two Harvestore systems. The agreements contained the following pertinent provisions:

> This order form is the entire and only agreement between the Seller and Buyer; and no oral statements or agreements not confirmed herein, or by a subsequent written agreement, shall be binding on either the Seller or Buyer.
>
> . . . .
>
> Buyer understands the conditions of use of the products and is not relying on the skill or judgment of the Manufacturer or Seller in selecting them because Buyer acknowledges that farming and livestock feeding results are very much the product of individual effort, combined with various climatic, soil, water, growing and feeding conditions which are beyond the control of the Manufacturer and Seller. Buyer recognizes that any advertisements, brochures, and other written statements which he may have read ... are not guarantees and he has not relied upon them as such.... Buyer understands that the sole warranty, express or implied, which is provided by [AOSHPI] ... is as follows....
>
> . . . .

I [BUYER] HAVE READ AND UNDERSTOOD THE TERMS AND CONDITIONS OF THIS PURCHASE ORDER INCLUDING THE WARRANTIES, DISCLAIMERS AND TERMS AND CONDITIONS HEREIN GIVEN TO ME, EITHER BY THE MANUFACTURER OR THE SELLER. I RELY ON NO OTHER PROMISES OR CONDITIONS AND REGARD THAT AS REASONABLE BECAUSE THESE ARE FULLY ACCEPTABLE TO ME.

The Kellers also executed leases obligating them to pay $1,220.87 per month for ninety-six months for one system and $890.49 per month for eighty-four months for the second system.

After the Harvestore systems were installed and the Kellers began to use them, the milk production of their herd dropped; a large proportion of the herd developed sores, watery eyes, snotty noses, and rough hair coats; and some of the herd died. In addition, witnesses testified at trial that the silos failed to produce the quality of ensilage that had been promised, that at the time they executed the purchase orders the Kellers had no reasonable basis to determine whether the representations made by AOSHPI through its distributor were true, and that the only persons who had knowledge of how the Harvestore systems would operate were employees and distributors of AOSHPI.

The Kellers ultimately initiated a civil action against AOSHPI and the seller in the District Court for Morgan County, Colorado. The case was subsequently removed to the United States District Court for the District of Colorado. *See* 28 U.S.C. § 1441 (1988); 28 U.S.C. § 1332 (1988). Among the claims asserted by the Kellers against AOSHPI was a claim of negligent misrepresentation based on section 552(1) of the *Restatement (Second) of Torts* (1965) (hereinafter section 552(1)).[2]

---

2. That section contains the following definition of negligent misrepresentation:
TOPIC 3. NEGLIGENT MISREPRESENTATION § 552. Information Negligently Supplied for the Guidance of Others
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
*Restatement* § 552(1).

AOSHPI subsequently filed a motion to dismiss the Kellers' negligent misrepresentation claim on the ground that such claim was barred by the terms of the purchase agreements.[3] The federal trial court denied the motion.[4] At the conclusion of the trial, the jury returned a verdict in favor of the Kellers and against AOSHPI on the Kellers' negligent misrepresentation claim. AOSHPI appealed the judgment entered on that verdict to the Tenth Circuit Court of Appeals.

## II

1. Whether a cause of action for negligent misrepresentation lies against the manufacturer of a product for representations made during the course of the sale of that product despite the execution of a fully integrated sales agreement.

■ It is well established that in some circumstances a claim of negligent misrepresentation based on principles of tort law, independent of any principle of contract law, may be available to a party to a contract. *See, e.g., Rosales v. AT & T Info. Sys., Inc.,* 702 F.Supp. 1489 (D.Colo.1988); *Wagner v. Cutler,* 232 Mont. 332, 757 P.2d 779 (1988); *Raritan River Steel v. Cherry, Bekaert & Holland,* 322 N.C. 200, 367 S.E.2d 609 (1988); *First Interstate Bank of Gallup v. Foutz,* 107 N.M. 749, 764 P.2d 1307 (1988); *Hoffer v. State,* 110 Wash.2d 415, 755 P.2d 781 (1988). In addition, as we have observed,[5] section 552(1) contains a definition of negligent misrepresentation. It is thus clear that a contracting party's negligent misrepresentation of material facts prior to the execution of an agreement may provide the basis for an independent tort claim asserted by a party detrimentally relying on such negligent misrepresentations.

That principle is fully compatible with previous decisions of this court and of our Court of Appeals. *See Cosmopolitan Homes, Inc. v. Weller,* 663 P.2d 1041 (Colo. 1983); *Bill Dreiling Motor Co. v. Shultz,* 168 Colo. 59, 450 P.2d 70 (1969); *Lembke Plumbing & Heating v. Hayutin,* 148 Colo. 334, 366 P.2d 673 (1961). *See also Wolther v. Schaarschmidt,* 738 P.2d 25 (Colo.App.1986); *Robinson v. Poudre Valley Fed. Credit Union,* 654 P.2d 861 (Colo. App.1982); *First Nat'l Bank in Lamar v. Collins,* 44 Colo.App. 228, 616 P.2d 154 (1980); *Birkenmayer & Co. v. Homestead Minerals,* 32 Colo.App. 258, 510 P.2d 449 (1973). Under the particular circumstances disclosed by the record, we conclude that the definition of negligent misrepresentation contained in section 552(1) is persuasive and controls the resolution of the legal issues presented in this case. We also conclude that the Kellers' complaint alleged sufficient facts to establish a claim of negligent misrepresentation against AOSHPI.

AOSHPI argues that, assuming the availability of a negligent misrepresentation claim in the circumstances of this case, the Kellers' execution of a fully integrated sales agreement precludes their assertion of such a claim. We disagree.

■ Integration clauses generally permit contracting parties to limit future contractual disputes to issues relating to the reciprocal obligations expressly set forth in the executed document. *KN Energy, Inc. v. Great Western Sugar Co.,* 698 P.2d 769 (Colo.1985). *See Moore v. Georgeson,* 679 P.2d 1099 (Colo.App.1983). Thus the terms of a contract intended to represent a final and complete integration of the parties' agreement are enforceable and parol evidence offered to establish the existence of prior or contemporaneous agreements is inadmissible to vary the terms of such con-

---

**3.** It is apparently not disputed that AOSHPI, although not a party to the purchase agreements, is entitled to rely upon the provisions of those agreements in defense of the Kellers' claims.

**4.** Prior to removal, AOSHPI unsuccessfully requested the state trial court to enter summary

judgment against the Kellers on their negligent misrepresentation claim on the ground that such claim was barred by the terms of the purchase agreements.

**5.** Note 2, *supra.*

tract. *Sentinel Acceptance Corp. v. Colgate*, 162 Colo. 64, 66, 424 P.2d 380, 382 (1967). However, as we have noted, claims of negligent misrepresentation are based not on principles of contractual obligation but on principles of duty and reasonable conduct. *Cosmopolitan Homes, Inc.*, 663 P.2d at 1043. The parol evidence rule does not bar the admission of evidence to establish tort claims not specifically prohibited by the terms of an agreement. *Agristor Leasing v. A.O. Smith Harvestore Prods., Inc.*, 869 F.2d 264 (6th Cir.1989) (general release of claims clause ineffective to bar claims of fraud and misrepresentation in the inducement). *See Formento v. Encanto Bus. Park*, 154 Ariz. 495, 744 P.2d 22 (App.1987). We recognized this distinction in *Bill Dreiling Motor Co.*, wherein we concluded that the parol evidence rule applicable to contract disputes had no force in a tort action alleging fraudulent misrepresentation in the inducement to execute an agreement. *See also Lembke Plumbing & Heating*, 148 Colo. 334, 366 P.2d 673.

■ Many other courts have also concluded that the mere presence of a general integration clause in an agreement does not bar a claim for negligent or fraudulent misrepresentation. *Agristor Leasing v. Saylor*, 803 F.2d 1401 (6th Cir.1986); *Moffatt Enters., Inc. v. Borden, Inc.*, 807 F.2d 1169 (3d Cir.1986) (applying Pennsylvania law); *Formento*, 154 Ariz. 495, 744 P.2d 22; *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 439 A.2d 534 (1982); *Gilliland v. Elmwood Property*, 301 S.C. 295, 391 S.E.2d 577 (1990). *See also Restatement* § 552C comment b (code and contract defenses are inapplicable in tort action); A. Corbin, *Contracts* § 580 (1989 Supp.); W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 110 (5th ed. 1984). We conclude that a general integration clause does not effect a waiver of a claim of negligent misrepresentation not specifically prohibited by the terms of the agreement. The general language of the integration provisions of the purchase agreements here at issue does not specifically preclude negligent misrepresentation claims.

The policy of encouraging honesty and candor in contract negotiations, which policy is reflected in the recognition of an implied covenant of good faith and fair dealing, supports this result. The implied covenant of good faith and fair dealing would virtually be eliminated if a contracting party could escape liability for negligent conduct simply by inserting a general integration clause into the agreement. *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 337 n. 7, 439 A.2d 534, 539–40 n. 7 (1982). As the court in *Formento* stated, "a seller should not be allowed to hide behind an integration clause to avoid the consequences of a misrepresentation, whether fraudulent or negligent." *Formento*, 154 Ariz. at 499, 744 P.2d at 26.

AOSHPI also asserts that the Kellers may not recover on their negligent misrepresentation claim because under section 552(1) they assumed the burden of establishing that AOSHPI was in the business of supplying information for the guidance of others in their business transactions with third parties and they failed to satisfy that burden of proof at trial. We do not accept AOSHPI's invitation to explore in the abstract this portion of section 552(1). The first certified question requests a determination of the effect of a contractual integration clause on the Kellers' negligent misrepresentation claim, not a determination of whether the Kellers established the elements of such claim. Furthermore, we are in no position in this certification proceeding to evaluate evidence contained in the record of the United States District Court trial proceedings.

We also reject AOSHPI's argument that claims of negligent misrepresentation should not be available in suits against manufacturers as opposed to suits against service providers or others in the business of providing information. There is no basis in principle to create a special shield encouraging manufacturers to make negligent misrepresentations of material fact in promoting purchases of their products.

For the foregoing reasons, we answer the first certified question in the affirmative.

## III

2. If so, whether the existence of a clause in the sales agreement specifically disclaiming reliance on representations made to the buyer prior to the execution of the sales agreement legally precludes a finding that the buyer in fact relied on such representations.

The contract in question contains the following provisions:

Buyer recognizes that any advertisements, brochures, and other written statements which he may have read ... as well as any oral statement which may have been made to him, concerning the potential of the Harvestore ... are not guarantees and he has not relied upon them as such.

. . . .

[Buyer has] read and understood the terms and conditions of this purchase order including the warranties, disclaimers and terms and conditions herein given to me, either by the manufacturer or the seller. [Buyer relies] on no other promises or conditions and regards that as reasonable because these are fully acceptable to [Buyer].

AOSHPI contends that these provisions constitute a waiver by the Kellers of any claim that requires proof of reliance on statements made by AOSHPI prior to the formation of the purchase agreements. AOSHPI relies on decisions holding that particular disclaimers of reliance clauses constituted waivers of negligence claims against manufacturers or sellers in certain circumstances. *See, e.g., One–O–One Enters., Inc. v. Caruso*, 848 F.2d 1283 (D.C.Cir.1988); *Condios, Inc. v. Driver*, 145 Ga.App. 537, 244 S.E.2d 85 (1978); *Rio Grande Jewelers Supply, Inc. v. Data Gen. Corp.*, 101 N.M. 798, 689 P.2d 1269 (1984); *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 157 N.E.2d 597, 184 N.Y.S.2d 599 (1959).

We disagree with AOSHPI's argument in the particular circumstances of this case. A contract provision purporting to prohibit a party to the contract from asserting a claim of negligent misrepresentation must be couched in clear and specific language. *See Agristor Leasing v. A.O. Smith Harvestore Prods., Inc.*, 869 F.2d 264 (6th Cir.1989); *Agristor Leasing v. Saylor*, 803 F.2d 1401 (6th Cir.1986); *Moffatt Enters., Inc. v. Borden, Inc.*, 807 F.2d 1169 (3d Cir.1986); *Formento v. Encanto Bus. Park*, 154 Ariz. 495, 744 P.2d 22 (Ariz. Ct.App.1987); *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 439 A.2d 534 (1982). The non-reliance provisions in this case simply state that the Kellers recognize that certain oral and written statements were not "guarantees" and that the Kellers did not rely upon those statements "as such." The language of those provisions does not clearly and specifically disclaim reliance by the Kellers on all representations made by AOSHPI prior to the execution of the contract.

For the foregoing reasons, we answer the second certified question in the negative.

ROVIRA, C.J., dissents.

### Chief Justice ROVIRA dissenting:

This case arises out of a dispute regarding agricultural feed and storage structures manufactured by A.O. Smith Harvestore Products, Inc. (Harvestore) and purchased and used by the respondents Alfred and Martha Keller (Kellers) on their dairy farm. The written sales agreement contained certain express limited warranties, disclaimers of warranties, and limitations of remedies by and for the benefit of the Kellers, Harvestore, and the seller. It also contained an express acknowledgement by the Kellers that the purchases were not made in reliance upon any advertisements, brochures, or other written statements which they may have read, and that no oral statements or agreements not contained within the agreement would be binding upon any party.

Prior to trial, all of the Kellers' claims, except claims for fraudulent and negligent misrepresentation, were dismissed. The case proceeded to trial against Harvestore on those claims and the jury found for the Kellers on the negligent misrepresentation claim, and for Harvestore on the fraudu-

lent misrepresentation claim. After an appeal by Harvestore to the United States Court of Appeals for the Tenth Circuit, that court certified the two questions set out in the majority opinion. Maj. op. at 70.

The majority opinion holds that a cause of action for negligent misrepresentation based upon section 522(1) of the *Restatement (Second) of Torts* (1965), lies against the manufacturer of a product for representations made during the course of the sale of that product, despite the execution of a fully integrated sales agreement. This conclusion is based on the rationale that: (1) a claim of negligent misrepresentation independent of any principle of contract law may be available to a party to that contract; (2) section 552(1) defines negligent misrepresentation; (3) thus, a party's negligent misrepresentation of material facts prior to the signing of an agreement may provide the basis for an independent tort claim by the other party. Maj. op. at 72. Because I believe that the majority confuses tort and contract principles and negates the provisions of a contract freely entered into, I dissent.

The majority states that a claim for relief based on section 552 of the *Restatement of Torts* is available in Colorado. I assume solely for the purpose of this case that such a claim exists, and, as does the first certified question, that manufacturers of products are subject to section 552. I do not express any opinion on whether it is necessary to establish that Harvestore was in the business of supplying information for the guidance of others in their business transactions with third parties before a claim for negligent misrepresentation under section 552 may be maintained.

Allowing a party to sue for representations made prior to the execution of a contract, although the contract specifically states that such representations are not to be relied upon and are not binding, is antithetical to the principles of freedom of contract. The official comment to section 4–1–102 of the Uniform Commercial Code (Code) which governs commercial transactions in Colorado provides that freedom to contract is a principle of the Code. § 4–1– 102, comment 2, 2 C.R.S. (1973). Contracts between competent parties, voluntarily and fairly made, should be enforceable according to the terms to which they freely commit themselves. *Rio Grande Jewelers v. Data General Corp.*, 101 N.M. 798, 800, 689 P.2d 1269, 1271 (1984). Parties to a contract should be able to allocate risk, and determine their rights and liabilities under a contract, such as disclaiming liability for negligent representations made prior to the sale. *See Tokio Marine & Fire Ins. Co. v. McDonnell Douglas Corp.*, 617 F.2d 936 (2d Cir.1980); *Berkel & Co. Contractors, Inc. v. Providence Hospital*, 454 So.2d 496 (Ala.1984); *Burroughs Corp. v. Datacap*, 124 A.D.2d 622, 507 N.Y.S.2d 882 (1986); *Stanley v. Miro*, 540 A.2d 1123 (Me.1988); *Meeting Makers, Inc. v. American Airlines*, 513 So.2d 700 (Fla.App.1987).

The majority opinion acknowledges the principle that generally, contracting parties can use integration clauses to limit future contractual disputes relating to the reciprocal obligations expressly set forth in the executed document. Maj. op. at 72. Yet, it holds that when a party claims that another party has negligently misrepresented information essential to an informed decision, the provisions of the contract are of no consequence because the claim is based "on principles of duty and reasonable conduct." Maj. op. at 73. Tort law should not be a means of circumventing the principles of contract law. "The effect of confusing the concept of contractual duties, which are voluntarily bargained for, with the concept of tort duties, which are largely imposed by law, would be to nullify a substantial part of what the parties expressly bargained for—limited liability." *Isler v. Texas Oil & Gas Corp.*, 749 F.2d 22, 23 (10th Cir.1984). "Tort law proceeds from a long historical evolution of externally imposed duties and liabilities. Contract law proceeds from an even longer historical evolution of bargained-for duties and liabilities." *Id.* "Important to the vitality of contract is the capacity voluntarily to define the consequences of breach of a duty before assuming the duty." *Id.* The idea that tort law should not be a means of circumventing the

principles of contract law was expressed in *East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). In that case, the injury was to the product itself, and the plaintiffs sued under a tort theory. In deciding that contract law and not tort law should control such an action, the Court relied on the principle that the parties should be able to set the terms of their agreements and that in exchange for a restriction on liability, the purchaser pays less for the product. *Id.* at 872–73, 106 S.Ct. at 2302–03.

I disagree that the contract must specifically disclaim negligent misrepresentation claims in order for the disclaimer to be effective, as the majority opinion holds. Maj. op. at 73 (parol evidence rule not applicable where agreement does not bar the assertion of negligent misrepresentation tort claims). Where there is no ambiguity, the agreement will be enforced according to the express provisions of the contract, giving words their plain and generally accepted meaning. *See, e.g., Public Serv. Co. v. City & County of Denver,* 153 Colo. 396, 403, 387 P.2d 33, 36 (1963); *U.S. Fidelity & Guar. Co. v. First Nat'l Bank of Fort Morgan,* 147 Colo. 446, 450, 364 P.2d 202, 205 (1961). The contract expressly provides that "no oral statements or agreements not confirmed herein, or by a subsequent written agreement, shall be binding on either the Seller or Buyer," and that "Buyer recognizes that any advertisements, brochures, and other written statements which he may have read ... as well as any oral statement which may have been made to him, concerning the potential of the Harvestore ... are not guarantees and he has not relied upon them as such." This language makes it clear that representations made prior to signing of the contract were not to be relied upon and would not be binding upon either party. This disclaimer was valid and no specific reference to negligent misrepresentation claims is necessary in order to preclude the bringing of such claims.

Finally, section 4–1–103, 2 C.R.S. (1973), of the Colorado Uniform Commercial Code provides in part: "Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to ... misrepresentation ... or other validating or invalidating cause shall supplement its provisions." Thus, negligent misrepresentation will not lie if in conflict with the particular provisions of the Code.

A claim of negligent misrepresentation under the *Restatement* displaces the particular provision of section 4–2–202, 2 C.R.S. (1973). This section provides that terms which are set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement. "It is well-settled that the parol evidence rule excludes extrinsic evidence which varies or contradicts the express terms of a written agreement, and that the rule applies to sales transactions as well as to other types of contracts." *Sentinel Acceptance Corp. v. Colgate,* 162 Colo. 64, 66, 424 P.2d 380, 382 (1967). Thus, representations made prior to the contract are not to be admitted into evidence where the contract expressly provides, as it did here, that the contract is fully integrated and prior oral or written agreements not within the contract are not to be relied upon and are not binding.

The majority is correct in asserting that the parol evidence rule is inapplicable where the allegation is *fraudulent* misrepresentation that induces the individual to enter into the agreement. Maj. op. at 73. *See Bill Dreiling Motor Co. v. Shultz,* 168 Colo. 59, 450 P.2d 70 (1969). However, here the jury found that there was no fraudulent misrepresentation. The majority cites several Colorado cases where the court refused to apply the parol evidence rule, but none of these cases involved negligent misrepresentations made about the product.

In my opinion, the fully integrated sales agreement precludes the bringing of an action for negligent misrepresentation. Public policy encourages freedom between competent parties to enter into contracts and establish the terms and conditions of

the relationship. Unless contrary to established public policy or statutory law, the terms of the contract should be enforced as written, not as a court would wish them to be. I would answer the first question in the negative, and therefore find no need to address the second.

Accordingly, I respectfully dissent.