UNITED STATES COURT OF APPEALS
**Filed 6/25/96**
FOR THE TENTH CIRCUIT

RAYMOND L. KONOLD, III,

        Plaintiff-Counterclaim-
        Defendant-Appellant,

v.

BASKIN-ROBBINS, INC., a Delaware
corporation, formerly known as Baskin-
Robbins Ice Cream Company;
CREAMLAND DAIRIES, INC., a New
Mexico corporation,

        Defendants-Appellees,

BASKIN-ROBBINS USA, INC., formerly
known as Baskin-Robbins, Inc., a
California corporation,

        Defendant-Counter-
        Claimant-Appellee.

No. 95-1251
(D.C. No. 90-M-2135)
(D. Colo.)

ORDER AND JUDGMENT[*]

Before EBEL, BARRETT, and HENRY, Circuit Judges.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

_____

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34 (f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

In this diversity case governed by Colorado law, plaintiff seeks recision of a franchise agreement into which he allegedly was fraudulently induced to enter by defendants' concealment of material facts. After a bench trial, the district court concluded that plaintiff failed to prove essential elements of his fraudulent concealment claim and entered judgment in favor of defendants. We review the district court's findings of fact for clear error and its conclusions of law de novo. See Salve Regina College v. Russell, 499 U.S. 225, 231, 233 (1991). Based upon our review of the record, the parties' briefs, and the pertinent law, we affirm.

## I. Factual Background

Shortly after plaintiff graduated from college, he and his father began investigating possible franchises for plaintiff to purchase. Plaintiff's father, who was a sophisticated businessman, was going to bankroll plaintiff's investment in a franchise. (Hereafter, we will

2

refer to plaintiff and his father as "the Konolds").  The Konolds made some inquiries of

Baskin-Robbins in 1982, but did not pursue the matter.  After looking at other franchises,

they renewed their focus on Baskin-Robbins in 1985.  At the outset, Baskin-Robbins sent the

Konolds an offering circular disclosing information on its history and the terms and

conditions under which the franchise would operate.

The offering circular included a discussion of site selection, which stated in pertinent

part as follows:

> Creamland[1] exercises its best judgment in selecting a specific site for
> a Baskin-Robbins store.  In determining an appropriate site for a Store, the
> required rental obligation and the market feasibility of such a Store are
> Creamland's primary considerations, with factors such as public accessibility
> and the surrounding area being taken into account.  With regard to Stores to
> be located in existing or proposed shopping centers or malls, additional factors
> such as the size and tenancy of such centers or malls and parking facilities are
> also important. *No guarantee as to the viability or profitability of any location
> selected is made.*  Competition exists with other retail establishments for
> desirable locations. *A Prospective Franchisee is encouraged to perform his
> own investigation and evaluation before entering into a Franchise Agreement.*

Appellee's Supplemental App., Vol. I, Tab W at 145-46 (¶ 11)(emphasis added).  In another

section, the circular advised the prospective franchisee that no information on "actual or

average sales, profits or earnings figures" for any existing Baskin-Robbins franchises or

group of franchises would be provided, nor any "projection or forecast of a Franchisee's

earnings, profits or sales to be derived from the operation of his Store." Id. at 154 (¶ 19).

---

[1]     Creamland held the territorial franchise from Baskin-Robbins that included Colorado.
It then sold individual franchises within its territory.

3

This section also warned the prospective franchisee of competition from other establishments selling ice cream, including other Baskin-Robbins franchises, and of various factors that could affect the earnings or profits of a prospective franchisee. The section concluded with the following disclaimer: "Neither Creamland nor Baskin-Robbins Ice Cream Company represent that any Franchisee will have a profitable operation." Id. at 155.

The offering circular also contained a form copy of the franchise agreement, which stated the following in one of the final paragraphs:

> "FRANCHISEE acknowledges that it has conducted an independent investigation of the Store, recognizes that the Store involves business risks, and acknowledges that FRANCHISEE has been advised to seek independent legal and financial advice with respect to the Franchise and this Agreement. BASKIN-ROBBINS and AREA FRANCHISOR expressly disclaim the making of, and FRANCHISEE acknowledges that it has not received, any representation, warranty or guarantee, express or impled, as to the potential volume, profits, or success of the Store."

Id., Tab A at 52 (¶ 27.1).

In addition, Creamland's franchise manager, Tom Lyons, told the Konolds that they should conduct their own investigation and that they should talk to the existing franchisees to get information about the business, because defendants would provide none. To this end, Lyons gave the Konolds a list of all the existing franchisees. The Konolds did talk to eight to ten franchisees.

Lyons also provided the Konolds with a list of potential sites, which included both existing stores available for resale and proposed new sites. After considering several sites, the Konolds ultimately settled on a new store to be opened in the Willow Creek shopping

4

center being constructed in southeast Denver. Both Lyons and Mark Brockett, Creamland's vice president and director of operations, told the Konolds that a site study had been performed on the Willow Creek site and that they believed it was a suitable site for a new store. Baskin-Robbins, as the primary lessee, executed a lease on the site in December 1985. Plaintiff ultimately executed a franchise agreement with Baskin-Robbins on June 23, 1986. He operated the Willow Creek store until April 1989, when he closed the doors and walked away because he could no longer afford to run the store.

## II. Legal Analysis

The district court characterized plaintiff's principal claim in this suit as follows:

[B]oth Ray Konold and his father, as his advisor, relied heavily upon the presumed knowledge and expertise of defendants concerning the suitability of a site for a new store and . . . when they were told that this site was a good one, they reasonably relied on that general assurance in going forward. According to the [Konolds], the concealment by the defendants of the facts that the site analysis did not include established criteria; that the average gallonage[2] for 35 stores in the Denver area had gone down 6.82% in 1985 from 1984; that consumption was flat and competition increasing (causing Brockett to reevaluate the franchising plan in his memorandum of March 10, 1986 . . . ); that Paul Cordova, district manager, had analyzed gallonage trends for the first six months of 1985 showing decline[3] and that Brockett and others did not believe the income to be expected from a new store would be sufficient to support a family, were all negative factors which made this general assurance misleading.

---

[2] "Gallonage" refers to the number of gallons of ice cream a franchisee purchases from Baskin-Robbins.

[3] Cordova's district, for which he was analyzing trends, included metro Denver, northern Colorado, and Cheyenne, Wyoming.

Appellant's App., Vol. I at 24.  As plaintiff does not dispute this characterization of his claim on appeal, we will accept it for purposes of our review.

To prevail on his claim for fraudulent concealment, plaintiff had to prove the following elements:

> (1)  the defendant's concealment of a material existing fact that in equity or good conscience should be disclosed, (2)  the defendant's knowledge that the fact is being concealed, (3)  the plaintiff's ignorance of the fact, (4) the defendant's intent that the plaintiff act on the concealed fact, and (5) the plaintiff's action on the concealment resulting in damage.

Burman v. Richmond Homes Ltd., 821 P.2d 913, 918 (Colo. Ct. App. 1991).  Thus, plaintiff had to establish that defendants had a duty to disclose the omitted information.  See Berger v. Security Pacific Information Sys., Inc., 795 P.2d 1380, 1383 (Colo. Ct. App. 1990).

In determining whether a defendant has a duty to disclose a particular fact, Colorado has followed the Restatement (2d) of Torts § 551(2)(e) (1965), which provides that "[o]ne party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, facts basic to the transaction, if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts."  E.g., Burman, 821 P.2d at 918; Berger, 795 P.2d at 1383.  Further, a defendant "has a duty to disclose if he has stated facts that he knows will create a false impression unless other facts are disclosed."  Burman, 821 P.2d at 918.

The district court found that nothing in the evidence suggested that Lyons and Brockett "did not believe in the truth of their opinions that this site was suitable for a viable store." Appellant's App. Vol., I at 25. Plaintiff does not challenge this finding on appeal. The court further determined that the evidence did not establish "that the omitted information constituted facts basic to the transaction about which there was any mistake on behalf of the plaintiff and his father," and also that "[t]here was no reason to expect disclosure of the withheld information in view of the express language of the offering circular and the franchise agreement, itself." Id. at 26.

Plaintiff contends that, under Colorado law, the district court should not have considered the disclaimers in the offering circular and franchise agreement in determining whether plaintiff would reasonably expect disclosure of the omitted information. The cases plaintiff cites in support of this argument, however, are inapposite. While it is true that a release of liability contained in a contract will not shield a defendant against a claim based on wilful or wanton conduct, see, e.g., Jones v. Dressel, 623 P.2d 370, 376 (Colo. 1981)(en banc), and that an integration clause in a contract will not bar a plaintiff from bringing a tort claim for misrepresentation, see Keller v. A.O. Smith Harvestore Prods., Inc., 819 P.2d 69, 72-73 (Colo. 1991)(en banc), neither of those situations is before us.

The district court did not suggest that the disclaimers barred plaintiff from bringing a claim, only that they were relevant in determining the reasonableness of plaintiff's expectations. Plaintiff has cited no cases, and we have found none, suggesting that, under

7

Colorado law, a trier of fact cannot consider the existence of written and oral disclaimers in determining whether a party's conduct or expectations were reasonable. Other courts have considered similar disclaimers in franchise materials in determining whether a party's reliance on a representation was reasonable. E.g., Hardee's of Maumelle, Ark., Inc. v. Hardee's Food Sys., Inc., 31 F.3d 573, 576 (7th Cir. 1994). Although defendants' provision of information certainly was less than forthcoming, the caveat in the circular, accompanied by the explicit suggestion that franchisees independently investigate, amply supports the district court's decision. Because we conclude that the district court did not err in determining that plaintiff could not reasonably expect disclosure of the omitted facts under the circumstances presented here, we need not address plaintiff's other challenges to the court's ruling.

The judgment of the United States District Court for the District of Colorado is AFFIRMED.

Entered for the Court

Robert H. Henry
Circuit Judge

8