BAIRD & WARNER, INC., Plaintiff-Appellee, *v.* CHARLES J. STUPARITS *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 63206

Opinion filed October 4, 1977.

Russell J. Topper, of Chicago, for appellants.

Robert E. Zeitner, of Chicago, for appellee.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Plaintiff, Baird & Warner, Inc., was granted summary judgment against defendants, Charles J. Stuparits and William Stuparits, thereby recovering a real estate broker's commission pursuant to a written exclusive listing agreement. The issue raised in this appeal is whether summary judgment was improperly granted.

Plaintiff is a corporation engaged in the real estate brokerage business in the city of Chicago. On April 16, 1973, the parties entered into an exclusive sales listing agreement whereby defendants employed plaintiff as their exclusive agent for a period of nine months. Plaintiff was to receive a 6% commission upon the sale of property commonly known as 1816 N. 79th Court, Elmwood Park, Illinois. Within the nine-month period, on November 1, 1973, plaintiff was informed that the property had been sold for $52,000; and plaintiff thereafter demanded 6% of the selling price or $3,120 as its commission pursuant to the agreement.

The property had been previously owned by defendants' father who died on March 19, 1973. His will was filed for record; probate proceedings were initiated; and defendants were issued letters of office for decedent's estate. As co-executors of their father's estate, defendants were authorized by the will to sell or otherwise dispose of the property as they, in their sole discretion, deemed necessary; to settle any claims of the estate; and to make and execute any necessary deeds or contracts. All of these powers could be exercised "without authorization, permission or order of court." Moreover, the will designated defendants as the sole beneficiaries of the estate. When defendants' father died, Chicago Title and Trust Company held the legal title to the property and defendants' father held the beneficial interest under a land trust. Pursuant to the provision of the trust agreement, defendants received the beneficial interest in the property upon their father's death.

After defendants had entered into the exclusive listing agreement, they became discouraged with plaintiff's efforts to sell the property and attempted to terminate the agreement. Defendants employed an attorney who wrote, on September 17, 1973, to plaintiff's saleswoman, Lucille Silvers, expressing defendants' dissatisfaction with plaintiff's efforts to sell and requesting that plaintiff voluntarily cancel the agreement. In response to the attorney's letter, Ms. Silvers wrote a letter, dated September 28, 1973, in which she said that she had produced two early offers to purchase and that her appointment sheet indicated 24 showings of the property. Although she said that plaintiff would prefer to continue representing defendants in the sale, she stated that if defendants insisted, plaintiff would agree to cancel the agreement with a 30-day notice. Defendants' attorney acknowledged receipt of the letter and said in another letter, dated October 11, 1973, to Ms. Silvers that the agreement would continue in effect subject to the 30-day notice of cancellation provision.

Plaintiff then learned that the property had been sold on November 1, 1973, for $52,000. When plaintiff's commission was not forthcoming, plaintiff filed suit. Plaintiff's complaint alleged the written exclusive agreement, its effort to sell the property, the sale of the property, and defendants' refusal to pay the commission. Defendants' answer either denied the allegations of the complaint or claimed lack of knowledge demanding strict proof, and denied liability.

Plaintiff thereafter moved for summary judgment, contending that a valid agreement was in effect, and that defendants had the capacity to enter into such an agreement as sole beneficiaries of the land trust, as sole co-executors of their father's estate, or as sole beneficiaries of the estate. With the motion, plaintiff filed various exhibits. Thereafter defendant filed an answer and affidavit (with exhibits) in support of a "COUNTERMOTION FOR SUMMARY JUDGMENT FOR DEFENDANTS." Although defendants' responsive pleading to the plaintiff's motion for summary judgment is entitled an "Answer to Plaintiff's Motion For Summary Judgment and Defendants' Countermotion For Dismissal," it was interpreted by the trial court as defendants' motion for summary judgment. Following the court's grant of plaintiff's motion and denial of defendants' motion, defendants appealed from the court's order which entered judgment in the sum of $3,120, plus statutory interest and the costs of the suit.

## I.

Plaintiff maintains that the court below acted properly in that a valid agreement existed between the parties and plaintiff was entitled to

summary judgment as a matter of law. We agree. Although defendants contend that there are genuine issues of material fact which barred summary judgment in this case, a careful review of the record convinces us that the disposition of the case turns on questions of law, and that the court below could properly find, and did properly find, that plaintiff was entitled to judgment as a matter of law.

Since defendants posit that certain matters raised issues of fact which we believe are actually questions of law, it is necessary to examine the record to clarify the posture of this case. There is no dispute that defendants signed an exclusive sales listing agreement with plaintiff on April 16, 1973. Likewise, there is no dispute that plaintiff was to receive a 6% commission if the property was sold within nine months. Neither party disputes that the agreement states in bold letters that defendants agreed that, "ALL NEGOTIATIONS AND OTHER DEALINGS ARE TO BE WITH AND THROUGH BAIRD & WARNER, INC." No one disputes that the property was sold within the nine-month period. Lastly, no one disputes that the property was sold during the 30-day cancellation period. Clearly, therefore, certain crucial facts were not in dispute. In light of these undisputed facts, we believe that the court below proceeded to the next logical inquiry: whether, as a matter of law, plaintiff was entitled to recover its stated 6% commission pursuant to the agreement.

Defendants, however, argue that despite these undisputed facts, there are genuine issues of material fact in the instant case which bar summary judgment. Specifically, they contend that there are issues of fact as to (1) whether plaintiff substantially performed under the agreement; (2) whether defendants rescinded their termination of the agreement; and (3) whether the agreement was valid without the authority of the Probate Division and without execution by defendants as co-executors. Notwithstanding the phraseology used by defendants to frame these alleged "genuine issues of material fact," we think it evident that defendants are attempting to create fact issues out of questions of law.

■■ Yet summary judgment is properly granted when the record presents purely questions of law. (*Wheaton National Bank v. Aarvold* (2d Dist. 1976), 38 Ill. App. 3d 658, 663, 348 N.E.2d 520; *People ex rel. Rappaport v. Drazek* (1st Dist. 1975), 30 Ill. App. 3d 310, 314, 332 N.E.2d 532; *Reconstruction Finance Corp. v. Lucius* (1st Dist. 1943), 320 Ill. App. 57, 75, 49 N.E.2d 852.) This is so because the important purpose of summary judgment procedure is the disposition of litigation through the trial or determination of cases in which the disputed issue is exclusively one of law. (*Applicolor, Inc. v. Surface Combustion Corp.* (1st Dist. 1966), 77 Ill. App. 2d 260, 266, 222 N.E.2d 168.) In reviewing the

pleadings, depositions, and affidavits in this case, as we must pursuant to section 57(3) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 57(3)), we note an interesting statement made by defendants in their answer to the complaint. The statement reinforces our view that the dispute here is exclusively one of law. In framing a response to plaintiff's allegation of the existence of the agreement and its terms, defendants stated:

> "With respect to the allegations recited in paragraph 3, defendants deny that they made or entered into a valid or subsisting written contract or agreement as alleged therein; further, defendants state that said listing agreement established no binding rights, duties, or obligations of the purported parties thereto."

Thus, defendants' own pleading reveals that the question in this case is one of law, rather than fact.

Plaintiff justifiably operated under the assumption that defendants were proceeding on the theory that the instrument or agreement was invalid. On appeal, defendants still maintain that the agreement is invalid as they lacked the capacity to enter into it. Simultaneously, however, they argue on the basis of statements made in their affidavits and depositions that plaintiff failed to perform under the agreement. We believe that defendants' numerous theories advanced below and their attempts on appeal to create fact issues where none exist have obfuscated the issue.

■■ ■ As a matter of law, a valid agreement existed between the parties. First, as beneficiaries of a conventional land trust, defendants possessed the requisite capacity to enter into a mutually enforceable contract. Under appropriate circumstances, the beneficiary of a conventional land trust may enter into a valid contract to convey title to trust property where the trust agreement vests in the beneficiary the sole right to direct the trustee to convey title. (*Seaberg v. American National Bank & Trust Co.* (1st Dist. 1976), 35 Ill. App. 3d 1065, 1069, 342 N.E.2d 751; see also *Celeste Italian Foods, Inc. v. Choyce* (1st Dist. 1972), 9 Ill. App. 3d 361, 363, 292 N.E.2d 177.) Second, as co-executors of their father's estate, defendants possessed the requisite capacity to enter into a mutually enforceable contract. Pursuant to the second article of their father's will, defendants could sell property of the estate as they deemed necessary without court permission. Third, as sole beneficiaries of the estate, defendants possessed the requisite capacity to enter into a mutually enforceable contract to convey the property in question. There is nothing in the record to indicate that any other heirs or legatees existed who could have been harmed by defendants' entry into the agreement with plaintiff. Thus, as a matter of law, defendants had the capacity to make a valid contract with plaintiff.

■■ Despite their claim that a valid contract did not exist, defendants

nonetheless maintain that plaintiff failed to perform its duties under it. According to defendants, this issue in particular raised questions of fact. Although plaintiff had generally pleaded performance of the agreement, defendants denied that performance in their affidavits and depositions. We note, however, that plaintiff, through its saleswoman Ms. Silvers, alleged in the affidavit offered in support of plaintiff's reply to defendants' motion to dismiss, that she had sent a letter to defendants' attorney indicating that plaintiff had submitted two offers which were rejected and had shown the property 24 times. A copy of the letter was attached to Ms. Silvers' affidavit. Moreover, her affidavit was subscribed on August 12, 1975—a date later than any of defendants' statements of non-performance contained in earlier affidavits and deposition testimony. Ordinarily the difference in dates might not be important; in the instant case, however, defendants failed to offer counteraffidavits to oppose such allegation of performance by plaintiff's saleswoman. Where such well alleged facts are not contradicted by counteraffidavit, they must be taken as true, notwithstanding the existence of contrary averments in the adverse party's pleadings which merely purport to establish *bona fide* issues of fact. *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497; *People ex rel. Scott v. Continental Can Co.* (1st Dist. 1975), 28 Ill. App. 3d 1004, 1007, 329 N.E.2d 362.

As defendants' denial of performance by plaintiff was insufficient to create a genuine issue of material fact (*cf. Investors Diversified Service, Inc. v. Straumietis* (2d Dist. 1972), 7 Ill. App. 3d 424, 425, 287 N.E.2d 734), the only question before the court was one of law as to whether defendants possessed the capacity to enter into a binding agreement. We have already indicated that defendants did possess such capacity. Consequently, the motion for summary judgment was properly granted. The order of the circuit court of Cook County is, therefore, affirmed.

Affirmed.

STAMOS and PERLIN, JJ., concur.