THE STREAMS CLUB, LTD., Plaintiff-Appellant, v. LELAND THOMP-SON, a/k/a Leland J. Thompson, *et al.*, Defendants-Appellees.

Second District   No. 2—88—0450

Opinion filed March 22, 1989.

Thomas B. Cassidy and David L. Grobart, both of Martin, Craig, Chester & Sonnenschein, of Chicago, for appellant.

Ronald O. Roeser, of Roeser, Vucha & Carbary, of Elgin, for appellees.

PRESIDING JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, The Streams Club, Ltd. (the Club), brought an action in the circuit court of Du Page County against condominium owners Leland and LaVerne Thompson, their condominium association, The Streams Condominium No. 2 (the Association), and others believed to have some interest in the condominium unit owned by the Thompsons. Plaintiff alleged breach of contract as well as the right to foreclose on a lien that plaintiff claimed arose because the Thompsons failed to pay annual dues to the Club.

Defendants answered the complaint and filed a counterclaim for declaratory judgment. Defendants alleged that although article 15 of the "Declaration of Condominium Ownership" (the declaration) originally required membership in the Club, the condominium owners amended the declaration in October 1983 to rescind the membership requirement. Defendants requested an order declaring the rights of the parties pursuant to the amendment.

Defendants moved for summary judgment on their counterclaim. The trial court found that the 1983 amendment was valid and entered summary judgment in favor of defendants. Plaintiff appeals, contending that because there are genuine issues of material fact regarding the validity of the amendment, summary judgment was improperly granted.

The Streams Condominium No. 2 "Declaration of Condominium Ownership" was recorded in April 1972. Article 15 of the declaration provides that the condominium developer would form a sports club adjacent to the condominium development. Upon purchase of a condominium unit, the condominium owner would become a member of the club and would be required to pay an annual fee.

Article 17 of the declaration sets out the procedures for amending the declaration. Article 17 provides in relevant part:

"17.1 *Amendment.* The provisions of this Declaration may be changed, modified or rescinded by an instrument in writing setting forth such change, modification or rescission, signed by Owners having at least three-fourths (3/4) of the total vote, and certified by the secretary of the Board, provided, however, that all lienholders of record have been notified either by personal service or mailing by certified mail of such change, modification or rescission, and an affidavit by said secretary certifying to same is part of such instrument."

In September 1983, the condominium owners sought to amend the declaration to rescind the Club membership requirement. Defendants

attached a copy of the amendment to their counterclaim for declaratory judgment and to their motion for summary judgment. The document sets forth, after preliminaries, that a meeting of unit owners took place on September 12, 1983, for the purpose of amending article 15; that notice of the meeting had been sent to each entity entitled to vote and to all lienholders of record; that 100% of the ownership in the common elements voted in favor of rescinding article 15; and that in consideration of the vote and the signatures of at least 75% of the total percentage of ownership in the common elements (signatures are attached to the amendment as exhibit A), article 15 would be rescinded as of the date that the document was recorded. The amendment was recorded on October 5, 1983. The amendment is signed by Edward R. Kregor, president of the Association.

Below Kregor's signature on the second page of the amendment the following certification appears:

"The undersigned, as Secretary of The Streams Condominium Number II, being duly sworn, states as follows:

1. That he caused notice of a special meeting of the unit owners called for the purpose of amending the Declaration of Condominium to be mailed or personally delivered to each person entitled to vote sent or delivered not less thant [sic] 10 days prior to the date of the meeting.

2. That he caused notice of such amendment and rescission of Article 15 of the Declaration to be personally served or posted by certified mail to all lienholders of record.

3. That the foregoing Amendment to Declaration of Condominium and its exhibit is true and correct in respect of the premises it represents." The certification was signed and sworn before a notary by the Association secretary, Betty Bristol.

Also attached to the amendment is a copy of the notice sent to the lienholders, a list of the lienholders, and the secretary's certification that she sent notice to them. This certification was also signed and sworn before a notary.

In their motion for summary judgment, the defendants contended that the Club did not have standing to bring the lien foreclosure action because it was not a successor in interest of the condominium developer and that the Association met all of the requirements for validly rescinding article 15. Defendants attached copies of the corporate documents of the Club and the original condominium developer and a copy of the amendment to the motion.

In support of the motion for summary judgment, the defendants relied heavily on the case of *Streams Sports Club, Ltd. v. Richmond*

(1983), 99 Ill. 2d 182. The facts in the *Richmond* case are almost identical to the facts of this case. *Richmond* involved the same plaintiff and another condominium owner and condominium association within The Streams development. There the club also sought to enforce a lien for unpaid membership dues. The condominium declarations involved are identical. In *Richmond*, the condominium association had attempted to amend the declaration to make club membership voluntary, not compulsory. The supreme court determined that the obligation to pay dues was a covenant running with the land, was binding on subsequent purchasers of condominium units, and the club's lien was enforceable. On the issue of whether the association had effectively amended the declaration, however, the court held that there was insufficient evidence to establish whether the amendment was in conformity with article 17 requirements. Quoting the appellate court decision, the court stated:

> " 'No evidence was taken to determine whether the amendment was passed by three-fourths of the unit owners. A certification by the secretary of the board would have substantiated this fact, but no certification is attached to the amendment. Also, there is no indication that all lienholders of record were notified. It would appear that the amendment would be valid and defeat the cause of action under any count if passed in accordance with the requirements.' (109 Ill. App. 3d 689, 698.) The record on appeal lacks sufficient proof that the attempted amendment to the condominium declaration was indeed properly made prior to Richmond's purchase of her condominium. It appears that a valid amendment would defeat the club's cause of action on all counts, but the record needs to be supplemented by the circuit court in order to accurately resolve this question." (*Richmond*, 99 Ill. 2d at 192-93.)

Defendants argued that they provided sufficient proof of a valid amendment in this case.

The trial court was persuaded by this argument and found that there was no "justification for going behind the certification of the Secretary, in the light of comments made by the Supreme Court in the Streams Club case." The trial court entered summary judgment in favor of defendants on their counterclaim and against plaintiff on its complaint.

On appeal, plaintiff contends that defendants' motion for summary judgment does not satisfy the requirements of section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005) or Supreme Court Rule 191(a) (107 Ill. 2d R. 191(a)), so as to

entitle defendant to summary judgment. Plaintiff contends that defendants did nothing more than proffer an uncertified copy of the amendment which the trial court could not have considered as determinative of the disputed issue.

■■ ■ Summary judgment is properly granted only where there is no genuine issue as to a material fact (*Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380), and this is to be determined from the pleadings, depositions, affidavits and admissions on file in each case. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c); *Komater v. Kenton Court Associates* (1986), 151 Ill. App. 3d 632, 636.) A reviewing court will reverse an order granting summary judgment if it is determined that a material issue of fact does exist. (*Econo Lease, Inc. v. Noffsinger* (1976), 63 Ill. 2d 390, 393.) Summary judgment may be granted with or without supporting affidavits (Ill. Rev. Stat. 1987, ch. 110, pars. 2—1005(a), (b)) if there remains no genuine issue as to a material fact. (*Cato v. Thompson* (1980), 83 Ill. App. 3d 321, 323.) If defendant does not produce uncontradicted facts in affidavit form, plaintiff may rely upon his complaint to raise genuine issues of fact and establish a triable cause of action. *Cato*, 83 Ill. App. 3d at 323.

The pleadings in this case do present an issue of fact. Defendant has alleged that the Association validly amended the declaration; the plaintiff has denied the validity of the amendment. Plaintiff contends that, because defendants failed to offer facts in an affidavit form in support of their motion for summary judgment, its pleadings are sufficient to defeat the motion.

We must determine, therefore, whether the amendment, as certified by the secretary, sufficiently conforms with the requirements for affidavits that it could lend evidentiary support to the motion for summary judgment. We conclude that it does.

■■ Rule 191(a) (107 Ill. 2d R. 191(a)) sets out the requirements for affidavits in support of and in opposition to motions for summary judgment. The rule provides that affidavits shall be made on the personal knowledge of the affiant; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall consist of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto.

■■ Plaintiff complains that the Association's amendment does not state that it is based on the secretary's personal knowledge; it does not set forth with particularity the facts upon which the defendants' claim is based; and it does not show that the secretary, if sworn

as a witness, could testify competently to the information contained in the amendment.

The amendment and the secretary's certification are not in the standard form usually followed in affidavits in support of motions for summary judgment. The amendment, however, was not prepared for litigation purposes. Even if the documents could be considered to contain technical deficiencies, substance, and not form, controls. See *Galinski v. Kessler* (1985), 134 Ill. App. 3d 602, 612.

The amendment does state with particularity the facts concerning the calling and the holding of the unit owners meeting, the sending of notice, the voting of owners, and the signatures of owners. Although it does not state that it is "made on the personal knowledge of the affiant," Rule 191 does not require that affidavits so specifically state. The secretary has sworn that the notices of the meeting and the amendment were sent by her and that the amendment and its exhibit are "true and correct in respect of the premises it represents." The secretary's certification is signed and sworn before a notary public. A false certification subjects the swearer to the penalty for perjury. Ill. Rev. Stat. 1987, ch. 101, par. 5.

Furthermore, Supreme Court Rule 191 does not demand that the affidavit contain the phrase "that the affiant, if sworn, could testify competently thereto." The rule is satisfied if it affirmatively appears from the whole of the document that the affiant would be a competent witness if called. (*Saghin v. Romash* (1970), 122 Ill. App. 2d 473, 477.) The secretary was apparently involved in the entire amendment process, and it does appear that she would be a competent witness if called. We consider that the amendment, as certified by the secretary of the Association, substantially conforms with the affidavit requirements and would have the same degree of reliability as an affidavit.

Plaintiff complains that the photocopy of the amendment is not certified by the recorder of Du Page County as a true and accurate copy of the amendment on file with him. However, a review of the record reveals that the plaintiff did not challenge the authenticity of the amendment in the trial court. Therefore, its contention that the amendment was not certified in a manner sufficient to meet a threshold burden of establishing its authenticity has been waived. An issue raised for the first time on appeal may not be considered, even in a summary judgment action. *Anderson "Safeway" Guard Rail Corp. v. Champaign Asphalt Co.* (1971), 131 Ill. App. 2d 924, 929.

We conclude that the amendment did set forth facts in an affidavit form, and the trial court properly considered the amendment as a source of evidentiary facts in support of the summary judgment mo-

tion.

▮ Plaintiff next contends that even if the amendment is considered an affidavit, genuine issues of fact still exist concerning the validity of the amendment. Plaintiff argues that an issue of fact exists concerning the propriety of some of the unit owners' signatures on the amendment.

Edward Kregor, president of the Association, signed the amendment as "attorney-in-fact" for many of the unit owners. Plaintiff argues that the amendment itself does not establish the validity of the attorney-in-fact signatures, and there is no evidence to establish that Kregor was properly authorized to act as attorney-in-fact. Plaintiff has, however, failed to attack the amendment with evidentiary facts which might contradict the amendment and certification on this issue.

The amendment states that "its exhibit [the signatures] is true and correct in respect to the premises it represents." The secretary has, in effect, sworn to the validity of the signatures in her certification. Plaintiff merely challenges the signatures with allegations and not with evidentiary facts which might establish that Kregor did not have proper authorization. Because plaintiff has not presented evidentiary facts demonstrating that any signature is invalid or unauthorized, the secretary's representation must be taken as true. Where well-pleaded facts are not contradicted by counteraffidavits, the facts must be taken as true notwithstanding the existence of contrary averments by the adverse party which merely purport to establish *bona fide* issues of fact. *Baird & Warner, Inc. v. Stuparits* (1977), 53 Ill. App. 3d 338, 343.

Plaintiff also contends that there is a genuine issue of material fact concerning whether the required number of owners signed the amendment. Article 17 of the declaration requires that amendments be in writing and signed by "[o]wners having at least three-fourths (3/4) of the total vote." The declaration defines "owners" as:

> "The person or persons whose estates or interests, individually or collectively, aggregate fee simple absolute ownership of a Unit. Unless otherwise specifically provided herein, this said word shall include any beneficiary of a trust, shareholder of a corporation or partner of a partnership holding legal title to a Unit."

Plaintiff concludes, based on the definition of "owners," that article 17 requires that all holders of any ownership interest in a unit must sign an amendment if their interest is necessary to aggregate fee simple absolute ownership of that unit. Plaintiff points out that the Thompsons' unit is held in joint tenancy; however, only Leland signed

the amendment. Because the amendment does not establish that each signature evidences fee simple absolute ownership or that the signatures represent three-fourths of the total vote, plaintiff asserts that there is a genuine issue as to the validity of the amendment.

Defendants contend, on the other hand, that only one signature per condominium unit was required because the condominium bylaws set forth voting procedures and dictate that "[t]here shall be one person with respect to [each] Unit Ownership who shall be entitled to vote at any meeting of the Owners." Plaintiff responds that the bylaws only apply to the corporate governance of the Association, and reliance on the bylaws to determine procedures for amending the declaration is improper.

■ As plaintiff admits, the declaration is a contract. The parties disagree over the interpretation of the contract's terms as regards voting. The interpretation and construction of a contract is a matter to be determined by a court as a question of law. (*Sherbrooke Homes, Ltd. v. Krawczyk* (1980), 82 Ill. App. 3d 990, 992.) Therefore, interpretation of the voting provisions of the declaration is a proper issue for the court's determination on a motion for summary judgment.

We consider that the declaration and the bylaws are meant to be read together and that a valid amendment requires only one signature per condominium unit.

■ Article 17 requires that amendments be signed "by Owners having at least three-fourths (3/4) of the total vote." The crucial language in that phrase is "of the total vote." The amendment does not require the signatures of three-fourths of all the owners; it requires the signatures of owners having three-fourths *of the total vote*. Plaintiff's interpretation would render the phrase "of the total vote" meaningless. We cannot ignore the phrase or consider it surplusage if it can be given meaning and harmonized with other provisions in the contract. See *Zannis v. Lake Shore Radiologists, Ltd.* (1979), 73 Ill. App. 3d 901, 906.

■ The declaration itself does not define "total vote" or "vote." The bylaws, however, do set forth the voting rights with respect to each unit ownership. The bylaws state:

> "1.2 Voting Rights. There shall be one person with respect to such Unit Ownership who shall be entitled to vote at any meeting of the Owners. Such person shall be known (and hereinafter referred to[)] as a 'voting member.' Such voting member may be the Owner or one of the group composed of all the Owners of a Unit Ownership, or may be some person designated by such Owner or Owners to act as proxy ***. *** The total num-

ber of votes of all voting members shall be 100, and each Owner or group of Owners shall be entitled to the number of votes equal to the total of the percentage of ownership in the Common elements applicable to his or their Unit Ownership as set forth in 'Exhibit B'."

Exhibit "B" simply indicates that there are 40 units in the Streams Condominium No. 2, with varying percentages of ownership in the common elements assigned to each.

Article 7, section 7.1, of the declaration states that administration of the condominium shall be vested in a board of managers or board of directors of the condominium association. Section 7.2 states that the bylaws for the board shall be the bylaws appended to the declaration and made a part thereof. Section 7.2 makes it clear that the bylaws are not completely separable from the declaration as plaintiff suggests. Furthermore, the bylaws were executed together with the declaration as part of one transaction or agreement, and as such they are to be read together and construed as a single instrument. See *Pecora v. Szabo* (1981), 94 Ill. App. 3d 57, 63.

■ Article 17 indicates that the amendment process is to be administered by the board, as evidenced by the requirements that the board's secretary send the notices and certify the amendment. It was proper, therefore, for the board to look to the bylaws to determine the procedures it should follow in carrying out the amendment process.

Defendants' interpretation of the signature requirements, relying on the bylaws, gives meaning to the provisions of the declaration without rendering any part of it ineffective. We consider, therefore, that a valid amendment requires the signatures of *voting members* representing at least three-fourths of the ownership in the common elements.

The amendment sets forth that the signatures represent "75% or greater" of the total percentage of ownership in the common elements. Plaintiff has not challenged the percentages with any contradictory facts in an affidavit form. It must be taken as true, therefore, that the signatures represent at least three-fourths of the total vote, as article 17 requires.

■ Finally, plaintiff has alleged that the Club is a third-party beneficiary of the contract (the declaration) between the condominium developer and the unit owners, and, as such, the contract cannot be modified without its approval. We disagree. The contract is, by its own terms, amendable by vote of the unit owners. Article 17 sets forth the procedures for amendment. Even if the Club is a third-party

beneficiary of the contract, it is the beneficiary of a contract which allows modification and rescission of its terms by unilateral action of the owners. A third-party beneficiary is bound by the terms of the contract in the same manner as the parties are bound. (See *Kessler, Merci & Lochner, Inc. v. Pioneer Bank & Trust Co.* (1981), 101 Ill. App. 3d 502, 508.) The contract gave the owners the power to rescind even those provisions which benefitted the third party.

The *Richmond* case suggests that a valid amendment would defeat the Club's cause of action on all counts. (*Richmond*, 99 Ill. 2d at 192-93.) The amendment, as certified by the secretary of the association, appears to meet the requirements of article 17 and is valid on its face. Plaintiff has failed to establish that there are genuine issues of fact concerning its validity; therefore, summary judgment was properly entered in favor of defendants.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

INGLIS and REINHARD, JJ., concur.