NORTH AMERICAN OLD ROMAN CATHOLIC CHURCH, by its Archbishop Theodore J. Rematt, Plaintiff-Appellee, v. MARIA BERNADETTE, Defendant-Appellant.

First District (5th Division) No. 1—91—2017

Opinion filed July 10, 1992.

Richard I. Feingold and Daniel M. Starr, both of Starr & Rowells, of Chicago, for appellant.

Donald C. Clark, Jr., and Jennifer S. Holloway, both of Clark & De-Grand, of Chicago, for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff North American Old Catholic Church brought this forcible detainer action seeking to recover possession of the Queen of Peace Convent from defendant Sister Maria Bernadette. Plaintiff filed a motion for summary judgment. Defendant filed a motion to strike and deny plaintiff's motion for summary judgment. The trial court denied defendant's motion and granted plaintiff's motion for summary judgment. Defendant appeals from those orders.

The facts of the case are as follows.

The North American Old Roman Catholic Church (Church) is a Christian faith, professing traditional Catholic practices in the United States and Canada. Established by charter in 1919, the Church's ministries include the Sacred Heart of Jesus Church, Our Most Blessed Lady Queen of Peace Convent of the Sacred Heart of Jesus Church and the Queen of Peace Convent. Pursuant to its charter, the Church is a hierarchical religion headed by a single individual, the Archbishop. The Most Reverend Theodore J. Rematt is the current presiding Archbishop.

The Queen of Peace Convent (Convent) is located at 4208 North Kedvale, Chicago, Illinois. Sister Maria was a nun in the Queen of Peace Order. At the onset of this litigation she had been living at the Convent, along with Sister Maria Rita, for over 40 years.

On February 7, 1991, Sister Maria discovered a letter in her pew. The letter was dated January 31, 1991, and signed by Archbishop Rematt. The letter stated:

> "In accordance with my letter to you of January 16, 1991, I hereby request that you immediately vacate and deliver to me possession of the Church's convent located at 4208 North Kedvale in Chicago, Illinois."

On February 4, 1991, at 3:37 p.m. plaintiff filed its verified complaint requesting that a judgment for possession be entered in favor of the Church and against the defendant for the Convent. After proper service of summons and complaint was obtained, Sister Maria exercised her right to seek a trial by jury. The case was transferred to the jury room, where discovery proceeded. Subsequently, plaintiff filed its motion for summary judgment.

In its motion for summary judgment, plaintiff incorporated by reference its verified complaint. The verified complaint was not attached to the motion for summary judgment. Eight exhibits were attached to plaintiff's motion. Exhibit 1 is a copy of the Church's charter filed with the Cook County recorder. Exhibit 2 is a copy of the trusts placing the Convent and the Queen of Peace Church and rectory in trusts under which the Church is the sole beneficiary and possessor and Archbishop Rematt has power of direction. Exhibit 3 is a letter dated July 11, 1990, from Archbishop Rematt to Sister Maria. Exhibit 4 is a letter dated January 16, 1991, from Archbishop Rematt to Sister Maria assigning her to a convent in Wheaton. The letter stated that Sister Maria "will take up residence in the new convent no later than 14 days from the receipt of this letter." Exhibit 5 is a letter dated January 31, 1991, from Archbishop Rematt to Sister Maria requesting that Sister Maria "immediately vacate and deliver to me possession of the Church's convent." Exhibit 6 is a copy of *Bethany Reformed Church v. Hager* (1980), 84 Ill. App. 3d 684, 406 N.E.2d 93. Exhibit 7 is a copy of the trial court's decision in North American Old Roman Catholic Church v. Western Savings & Loan Association, No. 90—CH—6791. Exhibit 8 is an excerpt from the report of the trial court proceedings in North American Old Roman Catholic Church v. Western Savings & Loan Association, Nos. 90—CH—6793, 90—CH—6791, including Sister Maria's trial testimony in that case. Exhibits 1 and 8 are certified copies.

On June 5, 1991, defendant filed a motion to strike and deny plaintiff's motion for summary judgment and a response motion for summary judgment. Attached to defendant's response were the affidavits of Sister Maria and Sister Maria Rita. Each of the affidavits indicates that Sister Maria received a letter dated January 31, 1991, from Archbishop Rematt on February 7, 1991.

On June 10, 1991, the trial court held a hearing on the aforementioned motions. The trial court denied defendant's motion to strike and deny plaintiff's motion for summary judgment and granted plaintiff's motion for summary judgment. Execution of the judgment was

stayed 28 days. In granting the Church's motion for summary judgment, the trial judge stated in part:

"In this situation where Sister [Maria] Bernadette was transferred to a different convent she was required to relinquish her right to a possession that is defined in this cause of action. Her failure to comply with that requirement clearly is a violation of her employment contract with the church. Based on that I think Bethany [*Bethany Reformed Church v. Hager* (1980), 84 Ill. App. 3d 684, 406 N.E.2d 93] clearly stands for the proposition that occupancy of residential property owned to [*sic*] the church does not create a landlord tenant relationship. As such the landlord or the person who is entitled to possession at any point in time may require that possession be given up. Based on that I believe the motion for summary judgment will be sustained."

On June 26, 1991, defendant filed a motion to stay enforcement of the possession order pending appeal and for a waiver of bond on appeal. Attached to the motion was an affidavit of Sister Maria. Also attached to defendant's motion was a document entitled "Deposition and Excommunication" dated June 19, 1991, signed by Archbishop Rematt. The document indicates that Sister Maria "is no longer a religious of any kind; [she] no longer [has] a right to occupy any benefice or place of residence within our jurisdiction." On July 3, 1991, defendant's motion was denied.

Sister Maria appeals the trial court's grant of summary judgment for the Church as well as the denial of Sister Maria's motion to strike and deny the Church's motion for summary judgment.

For the following reasons, we affirm the decision of the trial court.

■ We find that the trial court properly denied Sister Maria's motion to strike and deny the Church's motion for summary judgment. Section 2—1005 of the Illinois Code of Civil Procedure provides that a party may move for summary judgment "with or without supporting affidavits." (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005.) No affidavit is required for a court to grant summary judgment. (*The Streams Club, Ltd. v. Thompson* (1989), 180 Ill. App. 3d 830, 835, 536 N.E.2d 459.) Thus, the church was entitled to seek summary judgment whether or not it had supporting affidavits attached to its motion. Moreover, Sister Maria's admissions that exhibits 1, 5 and 8 are proper undermine her argument that the trial court should have stricken the Church's motion for summary judgment because it was not supported by evidentiary facts.

Sister Maria also argues the Church "in reality, attempted to obtain a judgment on the pleadings because it did not attach any affidavits to its motion for summary judgment and because its exhibits where [sic] submitted in an improper and objectionable form." We find this argument without merit. Sister Maria concedes that three of the exhibits were properly before the court. The fact that the motion for summary judgment was supported by evidentiary facts also undermines the argument that the church was in reality attempting to obtain a judgment on the pleadings.

■ Defendant alleges that the trial court committed reversible error by failing to strike plaintiff's exhibits 2, 3, 4, 6, and 7 and maintains that had these exhibits been stricken the trial court would have had no basis on which to grant summary judgment in favor of the plaintiff.

Once asked to rule on the admissibility of the exhibits, the trial court should have done so. However, we do not find the error to be reversible error since we find sufficient evidence to support a grant of summary judgment in favor of the plaintiff, notwithstanding any objectionable exhibits. We note that many of the issues in this case are raised due to technical defects. While we have found sufficient admissible evidence to support the grant of summary judgment, we wish to point out that many of the alleged defects and controversies could have been easily avoided through careful pleading.

■ Both sides make forceful arguments in support of and in opposition to the summary judgment. However, we feel that constitutional principles applying to the State and religion require an affirmance of the trial court's order. Although the State has a legitimate interest in providing a forum for the peaceful resolution of church property disputes, the civil court's rule in such disputes is severely circumscribed by the first amendment and, accordingly, civil courts may not resolve such disputes on the basis of religious doctrines and practice. (*Jones v. Wolf* (1979), 443 U.S. 595, 61 L. Ed. 2d 775, 99 S. Ct. 3020.) On issues of religious doctrine or polity, the civil court must defer to any resolution of those issues reached by the highest authority within the hierarchical church organization. *Serbian Eastern Orthodox Diocese v. Milivojevich* (1976), 426 U.S. 696, 724-25, 49 L. Ed. 2d 151, 171, 96 S. Ct. 2372, 2387-88.

However, if as in this case, no consideration of doctrine is involved, States are free to adopt any one of various approaches for settling church property disputes. One such approach is the neutral principle of law approach in which the court determines property ownership by applying general principles of law, examining local

church charters, State statutes governing the holding of church property and other pertinent documents. *Grace Evangelical Lutheran Church v. Lutheran Church—Missouri Synod* (1983), 118 Ill. App. 3d 151, 454 N.E.2d 1038.

A motion for summary judgment should only be granted where the pleadings, depositions, and admissions on file, together with the affidavits, if any, disclose that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. (*Sons v. Taylor* (1991), 219 Ill. App. 3d 923, 925, 579 N.E.2d 1281; *Breeze v. Payne* (1989), 181 Ill. App. 3d 720, 726-27, 537 N.E.2d 453, 458.) The court must construe the pleadings, depositions and affidavits most strictly against the movant and liberally in favor of the defendant. (*Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 522, 434 N.E.2d 50, 52.) When determining the existence of a material fact, the court must find such an issue supported by evidentiary facts revealed in the record (*Riverton Area Fire Protection District v. Riverton Volunteer Fire Department* (1991), 208 Ill. App. 3d 944, 951, 566 N.E.2d 1015).

At the hearing to strike and deny plaintiff's motion for summary judgment, counsel for the defendant requested the trial court to rule on the admissibility of exhibits 2 through 7. Defendant argues that the trial court should have stricken exhibits 2 (Church trust documents), 3 (July 11, 1990, letter), 4 (January 16, 1991, letter) and 7 (Judge O'Brien's opinion in the chancery case) because they were not properly authenticated. Defendant concedes that Exhibit 5 (January 31, 1991, letter) was properly admitted into evidence because defendant admitted receiving it and attached it to her affidavit.

Defendant claims that exhibits 3 and 4 were improperly before the trial court because they were not sworn or certified in accordance with Rule 191. Exhibit 3 is a copy of a letter dated July 11, 1990, from Archbishop Rematt to Sister Maria, and exhibit 4 is a copy of a letter dated January 16, 1991, from Archbishop Rematt to Sister Maria. A copy of each of these letters was also attached to the Church's verified complaint. The verified complaint was already on file. The complaint was verified by Archbishop Rematt, the author and signatory of the letters. The verified complaint states the "True and accurate copies of the letters delivered by Archbishop Rematt to Sister Maria Bernadette are attached as Exhibits A and B [exhibits 3 and 4 to the summary judgment motion]." The "verification" attached to the verified complaint states:

"I, Theodore J. Rematt, being first duly sworn under oath, state that I have read the foregoing Verified Complaint and that the allegations set forth therein are true and correct."

Supreme Court Rule 191(a) sets out the requirements for affidavits in support of and in opposition to motions for summary judgment. (134 Ill. 2d R. 191(a).) The rule provides that affidavits shall be made on the personal knowledge of the affiant; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relied; shall consist of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto. Rule 191 is satisfied if it appears that the person swearing to the document's authenticity would be competent to swear to its authenticity if called as a witness. (*The Stream Club, Ltd. v. Thompson* (1989), 180 Ill. App. 3d 830, 835, 536 N.E.2d 457.) Since it appears that Archbishop Rematt would be competent to swear to the letters' authenticity if called as a witness and the letters were attached to the verified complaint which Archbishop Rematt signed under oath, we hold that exhibits 3 and 4 were properly considered by the trial court in granting summary judgment.

■ Defendant argues that the trial court should have stricken Exhibit 2 because there was no foundation for its admission since the exhibit was neither sworn to nor certified. Defendant argues that Exhibit 7 should have been stricken because it was not certified, sworn or signed by the judge. Even without these two exhibits, we find that the plaintiff presented sufficient evidence to support a grant of summary judgment. Therefore, we do not address the admissibility of these two exhibits.

■ After conceding that exhibit 5 was also properly before the trial court, defendant argues that exhibits 1 and 8, the only exhibits properly before the court, did not by themselves support the entry of summary judgment. Defendant states:

"Exhibit number 8 was relied upon by Plaintiff to attempt to establish that the Church owned the convent at 4208 N. Kedvale and that Archbishop was the head of the Church. But even if Defendant admitted these points in testimony before another court, Defendant's admissions are not admissions of the Plaintiff in this case and cannot be used by Plaintiff as evidence in support of its motion."

We find that defendant's argument lacks merit. The mere fact that an admission is not that of the party asserting such admission does not necessarily render the admission inadmissable. In the present case

Sister Maria does not dispute that she made the alleged admissions, nor does she dispute the veracity of the admissions.

Admissions made by a party in open court in a prior case may be used as evidence against that party in a summary judgment proceeding in a subsequent case. (*Elsa Benson, Inc. v. Kalman Floor Co.* (1989), 191 Ill. App. 3d 1016, 1023, 548 N.E.2d 485; see also *Riverton Area Fire Protection District v. Riverton Volunteer Fire Department* (1991), 208 Ill. App. 3d 944, 952, 566 N.E.2d 1015 (testimony received by witnesses under oath and in the record may be considered in support of a motion for summary judgment).) A transcript of Sister Maria's testimony in a prior case (North American Old Catholic Church v. Western Savings & Loan Association, Nos. 90—CH—6791, 90—CH—6793) was attached to the Church's motion for summary judgment as exhibit 8. Sister Maria does not dispute that exhibit 8 was properly before the trial court.

The transcript discloses the following:

"Q. [Plaintiff's counsel Mr. Clark] And to this day, the religious society that was founded by Sister Mariana of which you're a member, remains a part of the church, does it not?

A. [Sister Maria] Yes.

Q. Now as a member of the society, you live in a convent, don't you?

A. Yes.

Q. And that convent that you live in is located at 4208 North Kedvale in Chicago?

A. Yes.

Q. The church and not Our Lady Queen of Peace Society or its sisters currently own that convent, isn't that right?

A. Yes.

Q. And the church has always owned the convent that the sisters of Our Lady Queen of Peace is resided in, isn't that correct?

A. No.

MR. BUNGE: Object to the form of question, the word always.

THE COURT: I will overrule it. She's also answered no. Is that correct, sister?

THE WITNESS: Yes.

MR. CLARK: Who else has ever owned the convent that the sisters of Our Lady Queen of Peace Religious Society have resided in?

A. The Order of Our Most Blessed Lady Queen of Peace owns it. The Order of our Most Blessed Lady Queen of Peace owns the convent.

Q. They have legal title to that property?

A. We purchased it.

Q. And was legal title put in the society's name?

A. It was put under Sacred Heart of Jesus Church, because we are a part of the church.

Q. So let me ask my question this way then: Legal title to the property that the sisters of the society have lived in, has always been in the name of the church, hasn't it?

A. Yes."

The transcript further discloses:

"Q. [Mr. Clark] Sister, do you recognize Bishop Theodore Rematt as the legitimate successor of head of the church to Bishop Schweikert?

A. [Sister Maria] I recognize him as a Bishop.

Q. So you recognize him as the legitimate successor as head of the church to Bishop Schweikert?

A. Yes."

Sister Maria's only substantive argument in opposition to the Church's motion for summary judgment is that she received improper notice. Sister Maria's counteraffidavits are limited to recitals of when she received a letter from Archbishop Rematt requesting her to immediately vacate the premises.

Sister Maria's testimony in the previous chancery case indicates that she recognizes Archbishop Rematt as the head of the Church. She acknowledged that the Church holds legal title to the Convent. By letter dated July 11, 1990, Archbishop Rematt relieved Sister Maria of her position with the Church, indicating that she "henceforth perform only those duties and responsibilities expressly delegated to [Sister Maria] by [Archbishop Rematt] from day to day." By letter dated January 16, 1991, Archbishop Rematt assigned Sister Maria to a convent in Wheaton. The letter indicated that Sister Maria "will take up residence in the new Convent no later than fourteen days from receipt of this letter." By letter dated January 16, 1991, Archbishop Rematt requested that Sister Maria "immediately vacate and deliver to me possession of the Church's convent."

"The only matter to be resolved in a proceeding brought under the Forcible Entry and Detainer Act is the right to possession." (*S & D Service, Inc. v. 915-925 W. Schubert Condominium Association* (1985), 132 Ill. App. 3d 1019, 1021, 478 N.E.2d 478, 482.) No affirma-

tive defense was filed to the Church's complaint pursuant to section 9—106 of the Forcible Entry and Detainer Act (Ill. Rev. Stat. 1989, ch. 110, par. 9—106). The Church supplied uncontradicted facts demonstrating its right to possession, thus entitling it to summary judgment. "Where well-pleaded facts are not contradicted by counteraffidavits, the facts must be taken as true notwithstanding the existence of contrary averments by the adverse party which merely purport to establish *bona fide* issues of fact." *The Streams Club, Ltd. v. Thompson* (1989), 180 Ill. App. 3d 830, 837, 536 N.E.2d 459.

■■ Sister Maria alleges that the trial court erred in granting summary judgment in favor of the plaintiff because it improperly relied upon plaintiff's verified complaint, which was not admissible as evidence in support of its motion for summary judgment. The verified complaint was on file at the time the summary judgment motion was filed. The determination of whether a genuine issue of material fact exists is to be predicated upon the pleadings, depositions, and admissions on file, together with affidavits, if any. (*Anger v. Gottfried* (1975), 29 Ill. App. 3d 559, 331 N.E.2d 576.) After a review of the record we find nothing to support a contention that the trial court considered the verified complaint for an improper purpose.

■■ Sister Maria argues that the trial court erred in granting the Church's motion for summary judgment because defendant filed a general denial pursuant to Illinois Supreme Court Rule 181 and thus many genuine issues of material fact existed preventing the entry of summary judgment in favor of the plaintiff. The defendant in a forcible detainer action need not file an answer unless ordered to by the court. (134 Ill. 2d R. 181(b)(2).) However, to defeat a motion for summary judgment under the Forcible Entry and Detainer Act, a defendant is required to file an affidavit setting forth with particularity the facts upon which his or her defense is based. (*Killian v. Welfare Engineering Co.* (1946), 328 Ill. App. 375, 384, 66 N.E.2d 305.) Even if the complaint and the answer purport to raise an issue of fact, summary judgment is nevertheless appropriate if such issues are not further supported by evidentiary facts through affidavits or other proper materials. (*Cohen v. Washington Manufacturing Co.* (1979), 80 Ill. App. 3d 1, 398 N.E.2d 1202; see also *Meakens v. City of Chicago* (1980), 86 Ill. App. 3d 60, 407 N.E.2d 893.) Since we have found that the Church presented evidence which supports a finding of summary judgment, Sister Maria may not rest upon a general denial of the allegations in the verified complaint to defeat the motion for summary judgment.

■ Defendant alleges that the trial court should have dismissed plaintiff's complaint for being prematurely filed. The Church's action for possession was brought pursuant to section 9—102 (a)(2) of the Illinois Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 9—102(a).) That section provides:

"§9—102. (a) When action may be maintained. The person entitled to the possession of lands or tenements may be restored thereto in the manner hereafter provided:

\*\*\*

2. When a peaceable entry is made and the possession unlawfully withheld." (Ill. Rev. Stat. 1989, ch. 110, par. 9—102(a)(2).)

Defendant concedes that in the present case "this section clearly applied."

The Illinois Supreme Court in *Vogel v. Dawdy* (1985), 107 Ill. 2d 68, 76, 481 N.E.2d 679, noted that the "statute sets out when a demand in writing is necessary to maintain an action for forcible entry and detainer." The court held that "[n]o demand in writing is necessary to maintain an action for possession of land under section 9—102[(a)](2) [citations] or other parts of the statute which do not set out the statutory requirement of a prior demand." (*Vogel*, 107 Ill. 2d at 76.) Accordingly, we find that no demand in writing was required in the present case.

■ Defendant argues that in the present case, the plaintiff served the defendant with a statutory demand pursuant to section 9—104 (Ill. Rev. Stat. 1989, ch. 110, par. 9—104). Defendant argues that this demand was required by section 9—102 of the Forcible Entry and Detainer Act (Ill. Rev. Stat. 1989, ch. 110, par. 9—101 *et seq.*) and points to section 9—104 of the Forcible Entry and Detainer Act, which provides:

"Demand—Notice—Return. The demand required by Section 9—102 of this Act may be made by delivering a copy thereof to the tenant, or by leaving such a copy with some person of the age of 13 years or upwards, residing on, or being in charge of, the premises; or in case no one is in the actual possession of the premises, then by posting the same on the premises. When such demand is made by an officer authorized to serve process, his or her return is prima facie evidence of the facts therein stated, and if such a demand is made by any person not an officer, the return may be sworn to by the person serving the same, and is then prima facie evidence of the facts therein

stated. The demand for possession may be in the following form: To ....

I hereby demand immediate possession of the following described premises: (describing the same.)

The demand shall be signed by the person claiming such possession, his or her agent, or attorney." (Ill. Rev. Stat. 1989, ch. 110, par. 9—104.)

Defendant argues that since section 9—104 provides how "[t]he demand required by Section 9—102 *** may be made" (Ill. Rev. Stat. 1989, ch. 110, par. 9—104), it requires that a demand for possession is required by section 9—102(a)(2). We disagree.

Section 9—102 is made up of four subparts, (a) through (d). Subpart (a) is made up of subsections (1) through (8). Some of these subsections specifically require that demand or notices be given. (See section 9—102(a)(5) "after demand in writing"; section 9—102(a)(6) "after demand in writing"; section 9—102(a)(7) "have served the demand set forth in Section 9—104.1"; section 9—102(a)(8) "have served the demand set forth in Section 9—104.1" (Ill. Rev. Stat. 1989, ch. 110, pars. 9—102(a)(5), (a)(6), (a)(7), (a)(8)).) Section 9—104 does not impose a demand or notice requirement that is not otherwise specifically provided for by the particular subpart or subsection of section 9—102. Moreover, as stated above, in *Vogel v. Dawdy* (1985), 107 Ill. 2d 68, 76, 481 N.E.2d 679, the Illinois Supreme Court specifically found that a demand in writing is not required by section 9—102(a)(2).

Defendant further alleges that the suit was defective in that a demand was given but the demand did not give the defendant 30 days to vacate. We find that the suit was not defective; no demand was given or required.

In *Bethany Reformed Church v. Hager* (1980), 84 Ill. App. 3d 684, 406 N.E.2d 93, the plaintiff church brought a forcible detainer action to regain possession of a single-family residence used as a parsonage and occupied by the church's former pastor. The pastor gained possession of the church's property solely because of his position with the church. The court found that the defendant pastor's occupation of the parsonage was incidental to his employment as a pastor, the occupancy was part compensation for defendant's services and the occupancy under those circumstances did not create a landlord/tenant relationship. The court concluded that "[t]hus, whether or not the church acted properly in terminating defendant's pastorate, the defendant was required to move when he was no longer employed as pastor and the church demanded possession of its premises." *Bethany*, 84 Ill. App. 3d at 687, citing *Joppa High School District No. 21 v. Jones*

(1976), 35 Ill. App. 3d 323, 341 N.E.2d 419, and *Crain v. Burnett* (1914), 190 Ill. App. 407.

Defendant emphasizes the phrase "and the church demanded possession of its premises" (*Bethany*, 84 Ill. App. 3d at 687), claiming that it is clear that the *Bethany* court acknowledged that a demand for possession is necessary when a church demands possession from its former employees. Defendant also maintains that in *Bethany* notice was properly served and the plaintiff therein waited until the expiration of the 30-day notice period prior to filing suit. A reading of the appellate court's decision in *Bethany* fails to disclose any information about the type of demand given, statutory or otherwise. The aforementioned quote is the only mention of demand. No mention is made as to whether this was a verbal demand, a letter, a five-day notice, a 30-day notice or any other type of communication that could be construed as a demand for possession.

Defendant does correctly point out that in both *Joppa* and *Crain*, the cases relied on in *Bethany*, a 30-day demand notice was given. However, in both cases this was noted in a factual context and no mention was made as to whether the 30-day demand was a requirement to maintain the cause of action.

Defendant maintains that following the holding in *Avdich v. Kleinert* (1977), 69 Ill. 2d 1, 370 N.E.2d 504, it does not matter whether or not plaintiff could have evicted defendant without service of a statutory demand for possession notice because, once plaintiff gave such a notice demanding possession, it waived its right to proceed without the notice. Defendant also alleges that plaintiff's suit was filed prematurely since plaintiff did not wait 30 days after giving its demand before instituting suit against defendant.

The plaintiff in *Avdich v. Kleinert* (1977), 69 Ill. 2d 1, 370 N.E.2d 504, instituted a forcible entry and detainer action against a lessee in default of rent payment. Instead of relying on a waiver of notice provision contained in the lease as a means to terminate the tenancy, the lessor elected to regain possession of the premises pursuant to statute by serving a five-day notice of termination of the lessee's right to possession. The notice demanded payment and notified defendant that unless payment was made on or before the expiration of five days after the date of service of the notice, defendant's right of possession of the premises would be terminated. Although notice was sent by certified mail, lessor did not obtain a returned receipt of delivery as required by the Forcible Entry and Detainer Act. (Ill. Rev. Stat. 1975, ch. 80, par. 10 (repealed effective July 1, 1982), now Ill. Rev. Stat. 1987, ch. 110, par. 9—211.) Following a bench trial, judgment was en-

tered in favor of the lessor. On subsequent appeal to the Illinois Supreme Court, the appellate court's reversal of the trial court's judgment was affirmed. The lessor had argued that the written lease did not require notice in the event of a default in the payment of rent. The court observed that the Forcible Entry and Detainer Act, as a special summary proceeding, demanded strict adherence to statutory requirements for establishing jurisdiction. (*Avdich*, 69 Ill. 2d at 6, 370 N.E.2d at 507.) The court noted that the Act specifically required a returned receipt from the addressee for the apparent purpose of facilitating proof of service on the tenant. (*Avdich*, 69 Ill. 2d at 9, 370 N.E.2d at 508.) The court interpreted the inclusion of that requirement under section 10 as indicative of legislative intent that service not be considered complete until received by the addressee. (*Avdich*, 69 Ill. 2d at 9, 370 N.E.2d at 508.) Thus, the court held once the lessor chose to waive the provision in the contract and proceed in accordance with the statute, he was required to adhere to the requirements of the statute. The lessor failed to complete service as required by statute; therefore, the underlying forcible entry and detainer action was premature. *Avdich*, 69 Ill. 2d at 6, 370 N.E.2d at 507.

After the trial court granted plaintiff's motion for summary judgment, the following colloquy took place between defense counsel and the trial court:

"MR. STARR: I'd like to have the Court clear on a few things. How did the Court take the position or what does the Court say with respect to *Avitch v. Kleinert* [*sic*]?

THE COURT: *Avditch v. Klenert* [*sic*] clearly goes to the proposition whereas there is a landlord/tenant relationship and the individual requires that possession be given up based on a notice or demand. If you follow the procedures that are outlined in the statute you must comply with them to the fullest.

MR. STARR: In this case if we have a notice that was given—.

THE COURT: I find no notice requirements in this situation whatsoever.

MR. STARR: You are saying regardless of whether or not *Avditch* [*sic*] says if you choose to give one even if you are not required in this case *Avditch* [*sic*] doesn't apply? Is that what you are saying? I am not sure, Judge.

THE COURT: I see no notice here. The only thing I see here is a letter saying we demand possession. It's the same thing as if there is a trespasser. You have no obligation to give notice to a trespasser.

MR. STARR: *Avditch* [*sic*] says whether or not you have got an obligation if you give one you must do so correctly.

THE COURT: You must do so where a notice is required or has been waived based on a provision in a lease arrangement. There is no lease here. There is no tenant/landlord relationship. This is a place where possession is based on one's employment."

■■ The trial court held, and we agree, that *Avdich* is distinguishable from the present case. The trial court correctly noted that *Avdich* involves a landlord/tenant relationship, whereas the present case does not. Additionally the parties in *Avdich* inserted a provision in a contract to waive statutory notice. Once the lessor waived the provision in the contract, there was a statutory requirement to provide a notice. As we previously stated, no notice was required in this case. (See *Vogel v. Dawdy* (1985), 107 Ill. 2d 68, 76, 481 N.E.2d 679.) Moreover, we do not find that the letter dated January 31, 1991, acted as a waiver requiring the Church to conform with any statutory notice requirements.

We note that defendant states in her reply brief:

"Indeed, there is a strong argument that there was a landlord-tenant relationship between the Defendant and the Plaintiff-Church. As stated on page 35 of the Defendant's Appellant's Brief, the premises had a value. Monetary renumeration representing this value, *i.e.* rent, was waived by the Church for the services that the Defendant provided."

Defendant then quotes from her appellant's brief:

"Plaintiff also stated that the premises were provided as an 'emolument' of her [Sister Maria's] employment. Emolument is defined in Webster's New World Dictionary as 'gain from employment; salary, fees, etc.' On being terminated, Sister Maria wasn't a trespasser; she was just no longer a rent payer in that her services weren't required."

Sister Maria never made this argument to the trial court. In fact during oral argument to this court, counsel for defendant was asked several times what he considered the tenancy status of Sister Maria, *i.e.*, lessee, tenant at will, trespasser, occupant. Counsel continued to evade answering the question. Since Sister Maria did not raise this argument as to a landlord/tenant relationship in the trial court, we consider the issue waived. However, the issue of waiver aside, we find that the argument lacks merit.

Unfortunately our disposition of this case will not end the controversies between these parties. However, nothing in the record or her

brief in this case indicates that Sister Maria has a landlord/tenant relationship with respect to the Convent, nor that she has a legal right to possession, and it is not the place of this court to comment on anyone's moral duty. The Church has demonstrated a right to possession of the Convent and the trial court properly granted summary judgment in its favor.

Accordingly, for all of the reasons set forth above, we affirm the decision of the trial court.

Judgment affirmed.

LORENZ and GORDON, JJ., concur.